HERSFIELD and others *vs.* ADAMS and others.

Individuals engaged in the express business, viz. in forwarding goods and packages from place to place for hire, in vessels and conveyances owned by others, are not common carriers, and are not liable as such.

They are bailees for hire, to receive goods and forward them from place to place by the ordinary and approved means of conveyance, and have a legal right to define the extent of their liability.

The plaintiffs delivered to the defendants, at New York, two trunks containing clothing to be forwarded by them to B. at San Francisco. The defendants were engaged in the express business, but owned no vessels or boats themselves. They transported their goods upon vessels and conveyances owned by others. By the contract the defendants were not to be liable for any loss or damage arising from damages of the ocean or river navigation, leakage, fire, or from any cause whatever, excepting the fraud or gross negligence of the defendants, their agents or servants. The goods being damaged by the sinking of a flat boat, on the Chagres river, the master of the boat re-shipped them to Chagres; at which place, surveyors having examined the trunks, considered their contents as damaged and unmerchantable, and signed a certificate to that effect, advising that they should be sold. They were accordingly sold, at public auction, for $350, which sum was remitted to, and received by, the defendants.

*Held,* 1. That up to the time when the trunks were recovered from the sunken flat-boat there had been no fraud, or gross negligence, by the defendants or their agent, and that they were not liable for any damages that had occurred previous to that time.

2. That the defendants were not guilty of gross negligence in not delivering the trunks and their contents, in their damaged condition, to B. at San Francisco; the captain of the flat-boat being, at the time, in the possession of the goods, and having the right, by reason of his liability to the plaintiffs as a common carrier, to control them.

3. That the extent of the defendants' liability was the sum for which the trunks and goods were sold at Chagres, and the amount of freight in advance, with interest.

MOTION for judgment, upon a case, from which the following facts appeared. The plaintiffs were partners, merchants, having a house at New York and another at San Francisco. The defendants were partners transacting express business, the forwarding and care of packages for hire from the city of New York to San Francisco, in California. The defendants did not own any of the means (vessels and boats) of transportation between New York and San Francisco, neither were they in any manner interested in them, nor had they the least management or

control of them, either in person or by agents. The packages which the defendants expressed to San Francisco, they had conveyed in their own name from place to place in the vessels and conveyances owned by others, plying upon the route between the two cities, used in common by the community. The plaintiffs, on the 28th day of August, 1850, delivered to the defendants two trunks containing clothing worth $2025.09, to be forwarded and transported by the defendants to San Francisco to Mr. Burnett, the house of the plaintiffs, to be sold for the plaintiffs and on their account. The trunks were properly protected with canvas. The plaintiffs paid to the defendants $219.75 as a compensation for forwarding and transporting the trunks. The defendants upon the receipt of the trunks and the money, gave the plaintiffs the following receipt.

"Adams & Co.'s New-York and California Package Express, New York, Aug. 28, 1850. Received from Hersefield, Burnett & Back, in apparent good order, to be transported by our express, the following articles, marked as below, which we promise to forward in like order, subject to the agreement now made, to Mr. Burnett, at San Francisco. It is agreed, and is part of the consideration of this contract, that we are not to be responsible for any loss or damage arising from the dangers of ocean or river navigation, leakage, fire, or from any cause whatever, unless the same be proved to have occurred from the fraud or gross negligence of ourselves, our agents or servants, and we are in no event to be made liable beyond our route as herein receipted, value under $100, unless otherwise herein stated. Freight paid here $219.75—marked [N31], *50.51. Packages—two trunks. San Francisco.            For Adams & Co.        Cobb."

The defendants shipped the trunks on board one of the steamers plying between New York and Chagres in their own name and paid the freight on them. The trunks arrived safely at Chagres. On the 6th of September, 1850, the defendants shipped these trunks in their own name, paying freight for them, on board of a flat-boat, Capt. Thomas Angels, for Cruces, on the route to San Francisco, which was the usual conveyance. The boat arrived safely at a point upon the Chagres river below the

Hersfield *v.* Adams.

town of Varmos, on the evening of the 12th of September, 1850. The night was dark and the river was rising rapidly. Captain Angels deemed it imprudent to proceed, and made the boat fast at the bank of the river. At 1 o'clock on the morning of the 13th of Sept. it was discovered that the boat was leaking, owing to the springing of a plank, produced by the pressure of the current and drift wood passing down the river, and not by any insufficiency of the boat, or neglect of master or crew. Captain and crew made every effort to prevent the boat sinking, but the pressure of the current caused the boat to careen and she sunk. Captain and crew exerted themselves to save the cargo; they got much of it on the bank, and among it the trunks in question, and then the crew deserted. The master of the boat reshipped to Chagres the trunks in question, and other packages saved from the flat-boat. On the 26th of September, 1850, Captain Angels called upon three respectable merchants of Chagres to survey the packages saved from the flat-boat, and among them the trunks in question. The surveyors considered the trunks in question and their contents as being damaged and unmerchantable. They signed a certificate to that effect, advising that they should be sold. The conduct of the captain and surveyors was honest. On the 21st of September, 1850, the trunks and goods in question were sold by Captain Angels at public auction, and were purchased by W. Porter, the highest bidder, for $350. That sum was afterwards remitted to the defendants at New York, and was received by them. The goods from the two trunks were sent by Mr. Porter to San Francisco, and sold by him for $2000. There was a semi-monthly means of transportation from Chagres to San Francisco. The goods were never forwarded to Mr. Burnett. There was a semi-monthly means of communication between Chagres and New York. The plaintiffs were not notified of the accident or of the sale. The defendants offered judgment for $569.75, being the amount for which the trunks and goods sold at Chagres and the amount of freight paid in advance and interest on both sums. There was no pretense that fraud had been committed by the defendants or their agents, or that the defendants or their agents knew of the accident, or of

the sale, until informed of both, at New York, by the receipt of the account of sale transmitted to them.

MORRIS, J.   The defendants in this case, not being owners of, or interested in, the vessels and boats in which these trunks were to be conveyed between New York and San Francisco, were not common carriers, and are not liable as such.   The defendants are bailees for hire to receive these trunks at, and to forward them from and to, place to place, to destination, by the ordinary and approved means of conveyance, and had a legal right to define the extent of their liability.   By the contract in this case, the defendants obligated themselves to deliver the trunks and contents specified to Mr. Burnett at San Francisco. They were not to be liable " for any loss or damage arising from dangers of the ocean or river navigation, leakage, fire, or from any cause whatever, unless the same be proved to have occurred from the fraud or gross negligence of the defendants, their agents or servants."   In this case it is established that up to the time when Captain Angels and his crew recovered the trunks from the sunken flat-boat and placed them upon the bank of the river Chagres, there had been no fraud or gross negligence by the defendants or their agents; consequently the defendants are not liable for any damage that had occurred up to that period.   The only remaining question is whether, according to the spirit and letter of the defendants' agreement with the plaintiffs under the facts proved, they or their agents were guilty of gross negligence in not delivering the trunks and contents in their damaged condition to Mr. Burnett, at San Francisco.

The defendants' contract must be construed with reference to the rights and obligations of other persons engaged in the transportation of these trunks to and with the plaintiffs.   Capt. Angels of the flat-boat on the river Chagres, was a common carrier, and during the time he was in possession of the goods was responsible to the plaintiffs to the full value of the trunks and contents, $2025.09, for the faithful performance of his duty, and as an insurer, and for all his legal liability as common carrier; and he had a right, for the purpose of saving himself harmless

of legal responsibility, to do with these trunks and contents whatever the law under similar circumstances authorized common carriers to do ; and the defendants under the authority contained in their agreement had no power to prevent him. In addition to this, the defendants and their agents had no knowledge of what Capt. Angels was doing. The first information they received upon that subject was after he had sold the trunks and goods. The defendants, therefore, have not been guilty of negligence.

There must.be judgment for the plaintiffs for $507.75, being the amount for which the defendants offered that the plaintiffs might take judgment, (and which offer must control,) with costs to the defendants, since the offer of judgment.

[New York Special Term, February 12, 1855. *Morris*, Justice.]