Barker *et al.*, Administrators, &c., *v.* The New York Central Railroad Company.

To corroborate the conductor on a railroad in respect to the time of the arrival of his train at a station, evidence is admissible that he made a contemporaneous memorandum, in compliance with a regulation requiring it; and the time-table regulating the running, stoppage, &c., of such train may also be proved.

So, also, evidence is admissible of the regulations of the corporation, and of the custom of its agents, in respect to giving notice to passengers of the necessity of their changing cars in order to reach a given station.

A passenger was pointed by an agent of the carrier to a train then standing in his sight as one which would convey him to Lyons.  That train,

after running one hundred and fifty miles, deflected to a branch road not passing through Lyons, but was followed an hour afterwards by another train which passed through Lyons. *Held,* that the passenger was in fault for being miscarried, if, at or before reaching the point of divergence, the carrier used such means as would have conveyed to a traveler of ordinary intelligence, using reasonable care and attention, information of the necessity of his transferring himself to the second train.

If the traveler, without fault on his part, passed the point of divergence, but was apprised of his error and requested to take a return train on which he would have been carried free, in season to have reached a train which would have carried him to Lyons without delay, his refusal to do so, and persisting in remaining upon the wrong train, renders him a trespasser, liable to ejection from the cars.

APPEAL from a judgment of the Superior Court of the city of New York, entered on the verdict of a jury. The action was for an alleged unlawful ejection of the plaintiff's intestate, Albert W. Page, from the cars of the defendant. After the appeal to this court, the original plaintiff, Page, died, and his administrators were substituted in his place. At Syracuse, the defendant's road divides into two branches, one called the "old road," going by the way of Auburn to Rochester, and the other, called the "new road," going by the way of Lyons to Rochester. On the 8th of October, 1855, Page, who resided in Brooklyn, purchased a ticket at Albany over the defendant's road for Lyons, and took the train which left Albany at half-past six o'clock in the morning. At this time two trains left Albany in the morning — one at 6½ and the other at 7½ o'clock. The train leaving at 6½, from Syracuse went by the old road; the train at 7½ by the new road. The train leaving at 6½ A. M. arrived at Syracuse at 12 at noon, and left immediately by the old road. The train leaving at 7½ A. M. arrived at Syracuse at 1 P. M., and left at 1.35 P. M. by the new road. Page, instead of leaving the cars in which he took passage at Albany at Syracuse, and waiting there for the 7½ o'clock train, proceeded on from Syracuse by the 6½ o'clock train, until he was removed forcibly from the cars by the conductor and other employees of the defendant, at Vienna, after refusing to pay additional fare.

Barker *v.* The New York Central Railroad Company.

The defendant assumed to justify this forcible removal on the ground that, at and before reaching Syracuse, Page had been notified in the usual way to leave that train at Syracuse, and take the 7½ o'clock train on its arrival for Lyons, and also on the ground that the conductor, soon after leaving Syracuse and between there and Marcellus, the first station, and about ten miles from Syracuse, told Page to change cars at Marcellus and go back to Syracuse by the train which would be met there going the other way, and that if he did so he would reach Syracuse in time to take the 7½ o'clock train from Albany, for Lyons. Upon the trial the defendant gave evidence tending to establish these facts; and also the fact, that a train was met at Marcellus which Page might have taken and reached Syracuse in time for the 7½ o'clock train from Albany; and that it was customary to carry passengers back free of charge under such circumstances. Page, who was sworn as a witness on the trial, testified that when he bought his ticket at Albany, a few minutes before 6½ o'clock, he asked the ticket agent what train he should take for Lyons, and that the agent pointed to the train he did take. Another witness testified that he heard this question, and saw the ticket agent answer by pointing to the train. There was no contradictory evidence as to this fact. Page further testified that the train arrived at Syracuse at a quarter to 12 o'clock, noon; that a man came to the door of the car and cried out, "This train stops twenty minutes for dinner"; that the train left there a few minutes past 12; that he heard no notice before or after arriving at Syracuse, or while there, that passengers for Lyons should change cars at Syracuse; that he did not learn in any way that he had to change cars there. Page also testified that he was not told by the conductor that he was on the wrong road until they had got twenty or twenty-five miles from Syracuse, and that he did not know he was on the wrong road until then; and that when so informed by the conductor he asked him why he had not told him at the first stopping-place, so that he could have gone back and got to Lyons the same day; that no offer was made to send him back to Syracuse

unless he paid fare. The verdict of the jury was for the de
fendant.

*John Graham,* for the appellant.

*Sidney T. Fairchild,* for the respondent.

SUTHERLAND, J. The questions on this appeal are pre
sented by exceptions taken by Page to the admission of cer-
tain evidence, and to the charge of the court, and to the
refusal of the court to charge certain matters as requested.

The first exception was to the allowance of the evidence of
Budd, the conductor on the train from Albany to Syracuse, in
answer to a question asked him as to the regulations of the
defendant in regard to the time-bill, or time-table, and entering
the time of the arrival and departure of trains. His evidence
in answer to this question was, in substance, that it was a
regulation of the defendant that the time of the arrival and
departure of a train should be noted down; that he accordingly
noted down the time of the arrival of the train at Syracuse,
and handed it to the conductor who took the train from him
there; that the railroad time and the railroad clocks at Utica,
Syracuse, &c., were regulated by the Albany time; that the
6½ o'clock train never stopped to dine at Syracuse, but the 7½
o'clock train did; that the time for the 6½ o'clock train to
arrive and leave Syracuse was 12 o'clock, noon.

This evidence was, perhaps, not very material; but as Page
had testified that the train in which he was a passenger arrived
at Syracuse about a quarter to 12, and that notice was given
that it stopped twenty minutes for dinner, and that it left
there a few minutes past 12, and as Budd had previously
testified that the train arrived at 11.55 A. M. precisely, I think
the evidence was competent and proper.

The object of the evidence was, no doubt, to discredit Page
by supporting or corroborating Budd.

It was certainly competent, with that view, to prove the fact
that Budd made a memorandum of the time of the arrival

of the train and handed it to the next conductor; and as to the evidence as to the regulations, &c., as Budd had contradicted Page as to the time of the arrival of the train, this evidence would tend to corroborate Budd upon the principle that the business of the defendant is a sort of public business, and their employees a kind of public officers; and that the presumption is that they would perform their duties according to the regulations of the business. (1 Greenl. Ev., § 40.)

Upon the same principle, I think, the exceptions to the allowance of the evidence of Budd, Hughes and Cotter, as to the regulations of the Company and the custom of brakemen as to giving notice to passengers to change cars, were not well taken.

It was a material question in this case whether such notice was given to Page or not. That was a disputed question. Page had sworn that he heard no notice. The object of the evidence as to regulations and custom was to show that the customary notice was given on this occasion according to the regulations.

It was not the object of the evidence to show what was done on other occasions, but what was done on this.

The evidence may not have been very material in this case, for Richards subsequently testified positively that he did give the notice, in a certain manner which he described, on the arrival of the train at Syracuse, but the evidence was competent (the order of proof not being material,) to corroborate Richards, and as tending to show notice independent of his evidence.

The material questions in this case are raised by the exceptions to the charge of the court.

The court charged the jury, if the agent at Albany pointed to the train which Page took, then it was necessary for the defendant to show, either that actual notice was given to him, before or on reaching Syracuse, to change cars there, or that such means were used after leaving Albany to give him such notice "that every traveler of ordinary intelligence, by the use of reasonable care and attention, would have acquired a knowledge of that fact;" and that it was not proved affirma-

tively that notice was in fact given before reaching Syracuse. The court then submitted to the jury the question whether the agents of the defendant did use such means to give the information or notice before or on reaching Syracuse; and charged that, if they did, it was Page's fault, and not that of the Company, that he remained ignorant of the necessity of changing cars at Syracuse and waiting for the next train from Albany, and he was wrongfully in the cars when they left Syracuse; but if they did not use such means, then he was not in fault for continuing on the same train from Syracuse.

The exception was to that portion of the charge which submitted to the jury the question whether the agents of the defendant had used such means (as had been previously defined by the court) to give the information or notice, and the consequent portion charging that if the jury believed such means were used, then it was Page's fault and not that of the Company that he remained ignorant of the necessity of the change, and he was wrongfully in the cars, &c.

In my opinion, this was submitting the question of notice to the jury quite as favorably to Page as it should have been.

The exception raises this question, and none other, that I can see: If, before or on reaching Syracuse, notice was given that the passengers for Lyons must change cars there, in such manner that all the passengers of ordinary intelligence, and with ordinary care and attention, would have heard it, was Page wrongfully in the cars when they left Syracuse?

The plaintiff's counsel insists that the action of the defendant's ticket agent at Albany, in pointing to the cars which Page took, was a misdirection, and misled Page, and put the defendant in the wrong, and absolved Page from the duty of giving that attention to any information or notice of a change of cars which ordinary passengers are supposed to give, or which he ought to have given, had it not been for the misdirection; that, if he was not awake, if he did not exhibit any vigilance at all, it was the fault of the Company, which had misled him in designating the train which he took at Albany as the train that went to Lyons. But can the direction of the

Barker *v.* The New York Central Railroad Company.

ticket agent at Albany be called a misdirection? I think it cannot. Passengers from Albany for Lyons could go by either the $6\frac{1}{2}$ or $7\frac{1}{2}$ o'clock train. If Page took the $7\frac{1}{2}$ o'clock train, he had to wait in Albany an hour; if he took the $6\frac{1}{2}$ o'clock train, he had to wait at Syracuse an hour and thirty-five minutes. How was the ticket agent at Albany to know that he did not prefer the delay at Syracuse? From his presenting himself and purchasing the ticket just before the $6\frac{1}{2}$ o'clock train started, the agent had a right to presume that he preferred that train. Under these circumstances, I think the designation by the agent of the $6\frac{1}{2}$ o'clock train as the train for Lyons cannot be called a misdirection or fault. It was natural and reasonable under the circumstances that he should tell Page that the $6\frac{1}{2}$ o'clock train was the train for Lyons, for the ticket which he bought would take him there, if he took the $6\frac{1}{2}$ o'clock train, in about the same time as the $7\frac{1}{2}$ o'clock train, and the agent had a right to suppose that he preferred the $6\frac{1}{2}$ o'clock train.

The next exception to the charge of the court was to that part of the charge submitting to the jury the question of fact whether Page was told by the conductor before reaching Marcellus to change cars there. As to this, the evidence was contradictory. The charge was, substantially, that, if the jury found that Page was not in fault in continuing on from Syracuse under the rules which had been laid down as to the notice to change cars on or before reaching there, then, if he was not told, before reaching Marcellus, that he was on the wrong road, nothing occurred before reaching Marcellus to place him in the wrong; but if he was told before reaching Marcellus that he was on the wrong road, that he would meet there a train going to Syracuse which he must stop and take, then it was his duty to have done so, if the jury believed that he would have reached Syracuse in time to take the train which left Albany at $7\frac{1}{2}$ A. M. for Lyons, and that he would have been carried back to Syracuse free of charge.

A train was met at Marcellus which Page might have taken and returned to Syracuse. There was no contradictory evi-

dence on this point. The conductor had testified that he told Page, before reaching Marcellus, to take the train which would be met there going to Syracuse. Page had testified that he had not been told that he was on the wrong road before reaching Marcellus. The conductor had not testified that he told Page that he would be carried back free, but he had testified that it was the custom of the Company to do so under such circumstances; that he never knew of a charge for taking a person back who got on the wrong road by mistake. Page did not pretend that he made any inquiry as to his being carried back free. This being the evidence bearing on the question whether Page should have changed cars at Marcellus, I see no error in the charge of the court in submitting that evidence to the jury. If it was the fault of the employees of the defendant, and not of Page, that he did not change cars at Syracuse, how could they remedy their fault otherwise than by sending him back to Syracuse in time for the 7½ A. M. train from Albany, free of additional charge? I see no other way. He was not tendered a free pass back, nor told that he would be carried back free; but, if told by the conductor, before reaching Marcellus, to take the train which was met there back to Syracuse, ought he not to have assumed that, under the circumstances, he would have been carried back without charge? It appears to me that the questions whether, if he had taken the train at Marcellus for Syracuse, he would have reached there in time for the 7½ o'clock train from Albany, and whether he would have been carried back without charge, were properly submitted to the jury. It cannot be said, I think, if Page was carried on the wrong road from Syracuse to Marcellus without any fault of his, that, therefore, he had a right to be carried to Rochester on the wrong road.

My conclusion is, that the judgment of the Superior Court should be affirmed, with costs.

*Judgment affirmed.*