PETER REED, Appellant, v. THE UNITED STATES EXPRESS COMPANY, Respondent.

Where an express company agrees to *forward* a package to a point beyond the terminus of its route, the contract expressly limiting its liability to that of forwarders, and through charges not having been paid, the liability of the company as a common carrier ceases at the end of its route, and if the package arrives there in safety and is delivered with proper instructions to another responsible carrier upon the line to the point of destination, its liability ceases. The equivalent of the words " to forward " is " to send ; " not " to carry." (HUNT, C., and LOTT, Ch. C., dissenting.)

When the receipt given by an express company and containing the contract is lost, but a sworn copy thereof is produced, an entry of the transaction made in the books of the company by the clerk receiving the package is not competent evidence for the purpose of showing what the contract was, nor is evidence of the custom of the company to make a special entry in cases of contracts of the nature of the one claimed, and that in the case at bar there was no such entry. (GRAY and LEONARD, CC., dissenting.)

Where the preliminary proof of loss and of comparison, has been given to make a copy of a contract evidence, the copy is legally of as high an order of proof as would have been the original, and parol proof cannot be given to weaken or alter the contract thus established. (GRAY an LEONARD, CC., dissenting.)

(Argued January 3, 1872 ; decided May term, 1872.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial district, setting aside a verdict in favor of plaintiff and ordering a new trial.

This action was brought to recover damages for an alleged breach of an agreement to transmit a package of currency from Chicago to the Bank of Dalton, Georgia, for redemption, and to return the proceeds. Plaintiff delivered to the defendant's money-receiving clerk, at its office in Chicago, a package containing $904 in the bills of the Planters' and Mechanics' Bank of Dalton, Georgia, saying that he wished it sent to the bank for redemption, and that his object was to have it redeemed or returned. It did not appear what, if anything, was said to the clerk as to what bank issued the bills contained in the package, or what instructions, if any, were given as to the marking or directing it. The clerk marked and receipted it. The plaintiff having lost the receipt, gave in evidence what as he testified was a true copy of it, which bore date December 10th, 1858, and read as follows: "Received of Peter Reed one package, said to contain currency valued at $904, and marked Bank of Dalton, Georgia, for redemption, which we undertake to forward to Dalton, perils of navigation excepted; and it is hereby expressly agreed that the United States Express Company are not to be held liable for a loss or damage, except as forwarders only." Upon the left margin of the receipt was the following: "The United States Express Company will forward bank notes, gold and silver, merchandise and packages, and collect notes, drafts and accounts, daily, between New York, Philadelphia, Boston, Albany, Buffalo, Dunkirk, Cleveland, Detroit, Dayton, Cincinnati, Sandusky, Toledo, Chicago, Rock Island, St. Louis, Iowa City, Kansas City, Omaha City, and other principal towns and cities of the west and south-west, California and Europe." No charges were paid. The clerk who received and receipted the package was sworn as a witness for defendant, and testified that he had no distinct recollection of the occurrence further than that the plaintiff brought a package of money there to send to Georgia, and that he receipted it

and billed it to Buffalo, which was then, by a regulation of the company, a rebilling office ; that when he received the package and receipted it, he, made an entry, containing the transaction, in the book of the company.  This entry defendant offered in evidence, claiming that, in the absence of the original receipt, it afforded some evidence of the terms upon which the package was received and forwarded.  Upon objection it was excluded, and the defendant excepted.  Defendant proposed to prove that it was the practice of the office to enter the fact in the book, in cases where they were to make collections, and that in this instance there was no entry of redemption or collection, which offer was objected to and rejected, and defendant excepted.  The defendant proved that it had no route south of New York, and proved by an entry in the books of Adams Express Company, that the package in question was, on the 14th of December, 1858, forwarded by that company from New York to Augusta, Georgia.  The evidence being closed, the defendant moved that the complaint be dismissed upon the ground that it did not appear by the receipt that the defendant undertook to carry the money to the Bank of Dalton, Georgia, and return the proceeds as alleged in the complaint.  The motion was denied and the defendant excepted.  The defendant then insisted that, by the terms of the receipt, its obligation was simply that of a forwarder, and that upon the face of the receipt it appeared that the company had no route south of New York, and asked the court to charge the jury that if they believed that the defendant delivered the package to Adams Express Company in the city of New York on the 14th of December, 1858, that its obligation as a carrier was then ended.  The court ruled to the contrary, " because " (as the court stated) " here is an express company receiving a package and giving a receipt to carry it through to Dalton, Georgia ;" to which ruling the defendant excepted.  The jury rendered a verdict in favor of the plaintiff for $1,205.34.  The case and exceptions were ordered to be heard, in the first instance, at the General Term.

*Geo. N. Kennedy* for the appellant. The parol evidence of what took place at time of delivery of package was competent to explain receipt. (*Quinby* v. *Vanderbilt*, 17 N. Y., 306.) Defendant, in refusing to account for the property, was liable. (*Muschamp* v. *Lancaster and Preston Junction Railway Co.*, 8 Mees. & Wels., 421; *Watson* v. *Ambergate Railway Co.*, 3 Eng. L. & Eq. R., 497.) An undertaking by a common carrier to forward makes him liable for delivery at place of destination. (*Schnoder* v. *H. R. R. Co.*, 5 Duer, 55; *Chrislerman* v. *Am. Ex. Co.*, 2 Amer. R., 122.) Plaintiff was induced to believe, by acts of defendant's agent, that it carried through. (*Fairchild* v. *Slocum*, 19 Wend., 329; *Weed* v. *The Saratoga Railroad Co.*, 19 Wend., 534; *Van Santvoord* v. *St. John*, 6 Hill, 161; *Hart* v. *Rensselaer and Saratoga R. R.*, 4 Seld., 37; *Judson* v. *W. R. R. Co.*, 6 Allen, 489; 2 Redfield on Railways, 22, 93.) Defendant is to be regarded as a common carrier. (*Sweet* v. *Barney*, 23 N. Y., 335.) It cannot, by notice or exception in a receipt, exempt itself from liability for negligence. (*Belger* v. *Am. Ex. Co.*, 51 Barb., 69; *Buckland* v. *Adams Ex. Co.*, 97 Mass., 124.)

*Sherman S. Rogers* for the respondent. The entry made by defendant's agent was competent evidence. (*Guy* v. *Mead*, 22 N. Y., 462; *Marcly* v. *Shultz*, 29 id., 346; *Brown* v. *Jones*, 46 id., 400; *Halsey* v. *Sinsebaugh*, 15 id., 485; *Kennedy* v. *Crandall*, 3 Lansing, 3; *Russell* v. *Hudson R. R. Co.*, 17 N. Y., 134.) Defendant's contract, at most, was to carry over its own route, and at the terminus deliver for further carriage to some other responsible carrier. (*Van Santvoord* v. *St. John*, 6 Hill, 157; *Gould* v. *Chapin*, 20 N. Y., 260; *McDonald* v. *Western R. R.*, 34 id., 497; *Hempstead* v. *N. Y. Central R. R. Co.*, 28 id., 485; *Dillon* v. *N. Y. and E. R. R.*, 1 Hilton, 231; *Wright* v. *Boughton*, 22 Barb., 561; *Nutting* v. *Conn. River R. R. Co.*, 1 Gray, 502; *Elmore* v. *Naugatuck R. R. Co.*, 23 Conn., 457; Parsons' Merc. Law, 218; Edwards on Bailments, 504.)

GRAY, C. That the defendant's route from Chicago in the direction of Dalton, Ga., terminated at the city of New York, was an undisputed fact, and if it had been necessary to prove that the plaintiff, at the time of leaving his package with the defendant, knew that fact, and that the defendant had no interest in or control over any route between New York and Dalton, the evidence was quite sufficient to justify such a finding. The fact that the defendant, within four days after the receipt of the package, delivered it to the Adams Express Company to be forwarded as directed, does not seem to have been questioned at the trial, nor was any question made as to the responsibility of that company. All these facts were substantially conceded by the learned judge at the circuit, who refused to recognize the general principle that the obligation of an express company is simply to carry safely to the end of its own route and then deliver its freight in the condition in which it was received to the next carrier upon the line with proper directions (see 2d Redfield on Law of Railways, 4th ed. sub. 14 of § 169, p., 23, as applicable to this case), "because," as he said, "here is an express company receiving a package and giving a receipt to carry it through to Dalton, Georgia;" and upon this ground alone he placed the plaintiff's right to recover. Such was not the language of the receipt; the undertaking was to forward the package (not to carry it) to Dalton, and by the terms of the receipt its liability was expressly limited to that of a forwarder. If, therefore, its language can be construed into an undertaking to do otherwise than forward, or, in equivalent language, send it by another safe line from the termination of its own line, there should be something in the surrounding circumstances indicative of the defendant's intention that the plaintiff should understand from the terms of the receipt that it intended to become liable for the negligence of the connecting lines between the termination of its own line and Dalton; in which it had no interest and over which it had no control. There was not even evidence that there were competing lines

between Chicago and Dalton, or any circumstance, however slight, contributing to the establishment of any motive or interest which could have prompted such an undertaking. The charges from Chicago to Dalton were not paid, as in the case of *Weed* v. *The Saratoga and Schenectady Railroad Company* (19 Wend., 535), and if the cotemporaneous entry of the transaction, made in the defendant's books, had not been erroneously rejected (*Barker* v. *The N. Y. C. R. R. Co.*, 24 N. Y., 599), it would have appeared that the defendant's only charge for its services was one dollar, a moderate price for transmitting the package over its own line from Chicago to its termination in New York. It was urged that, by a just interpretation of the language of the receipt, it was apparent that the defendant's engagement was to carry the package to Dalton, present it at the bank for redemption, and receive and return the proceeds, and, if it was not redeemed, to return the package. The original receipt was not produced. Secondary evidence of its contents furnished by the plaintiff was its substitute, the accuracy of which was not conceded by the defendant. If the secondary evidence is susceptible of the construction the plaintiff claims for it, the court erred in not permitting the defendant to prove the contents of the cotemporaneous entry of the transaction, in which it did not appear that the contents of the package was received, and to be, by the defendant, presented for redemption, in connection with the evidence offered of the custom of the office, whenever the company was to make collections, to enter that fact on its book as a part of the transaction; all this had a bearing as to the accuracy of the copy of the receipt produced by the defendant. But assuming the copy to have been accurate, the plaintiff's construction of it cannot be sustained. The package was directed to the Bank of Dalton; the undertaking was to forward it to that bank, who, by the direction upon the package, was made its consignee. The apparent object of the consignment was the redemption of the currency contained in it; redeeming it or seeing to its redemption was a trust confided to the consignee. My

conclusion is that, by the contract, the defendant undertook to carry the package over its own line and to forward, or, in equivalent language, send it from the termination of its line, in the same condition it was received, by a connecting route ; all of which was done by the safe delivery of the package to the Adams Express Company with proper directions.  Upon this ground, as well as for the errors stated in rejecting evidence offered by the defendant, the order granting a new trial should be affirmed, and judgment absolute ordered in favor of the defendant, with costs to be adjusted.

HUNT, C.  The written receipt of the company was given in evidence, by which the contract of carriage was established. The defendant then offered to read in evidence, an entry subsequently made by its clerk in the books of the company, as evidence of what the contract was.  The judge properly excluded the evidence.  Memoranda of facts, or circumstances, made by a witness at the time of the occurrence of a given transaction, are sometimes permitted to be given in evidence, to show the existence of such facts or circumstances. Thus in *Marcly* v. *Shults* (29 N. Y., 346), the offer was to read a memorandum of the width of the flush boards on a certain dam, which was a specific fact, material to the issue.  In *Guy* v. *Mead* (22 id., 462), the offer was to show that, at a given time, a certain indorsement of forty dollars was not on the note, that being a material fact for the consideration of the jury.  In *Barker* v. *N. Y. C. R. R.* (24 id., 599), a conductor was allowed to read an entry, made by him, of the arrival of the train at Syracuse, at a time named.  (See 1 Grenl. Ev., § 436, etc.)  It is quite likely that this entry was competent to be read, to show that a parcel had then been received, if that fact had been in doubt, or to show the date of the transaction, or the like.  This was not the purpose for which it was offered.  " The defendants' counsel claimed that

in the absence of the original receipt (a copy having been produced) it could be some evidence in regard to it." This means, that the subsequent entry by a clerk should be received as evidence to show that the real contract was different from the written one produced before the court. If the entry sustained the written contract, as proven by the plaintiff, it was quite unnecessary. The defendant was not called upon thus to strengthen its opponent's case. The preliminaries of loss and comparison having been proved, the copy was legally of as high an order of proof as would have been the original. The entry could only be important, as evidence, to weaken or to alter the written contract already established. No case can be found, I imagine, nor any dictum, which would authorize its admission for that purpose.

The principal question arises upon the construction of the contract. The defendant, being of the class of common carriers known as an express company, undertook with the plaintiff to "forward to Dalton, Georgia, for redemption," a package of currency, amounting to $900, and it is to be liable "as forwarders only." The company, it is said, had no means of its own to transport this money farther than the city of New York. This fact, however, was not made known to the plaintiff. On the contrary, it expressly assumed, in its contract with him, the same obligation upon the contract from New York, southerly, as from Chicago to New York. It does do not say to the plaintiff that I will carry your package to New York, and from thence I will forward it by some responsible company to Dalton. It assumes the same obligation throughout the whole distance, to wit, "to forward to Dalton." The receipt on the margin expressed the same idea. "The United States Express Company will forward bank notes, gold, * * * and collect notes and accounts, daily, between New York * * * Philadelphia * * * Cincinnati * * * and other principal cities of the west and south-west." No distinction is made between its duty in carrying to New York and other cities of the south and west. It "will forward" to each place. It is conceded by the

defendant's counsel that its liability to New York is that of a carrier, and that it is sufficiently expressed by the engagement to " forward " the package, and that it is not qualified by the expression that it is to be liable as forwarder only. There is no propriety in giving to this word two different meanings. It is the general rule that a word, when repeated in the same sentence or the same connection, is to bear the same signification. It would certainly be a violent assumption to impute different meanings at the same time to a word when used but once in a sentence. When the defendant undertakes to forward this package from Chicago to Dalton, it is a single contract. This contract is denoted by a single word, and that is the same throughout the distance. Although it was, in fact, an extension of its liability beyond its own line, I am satisfied that the defendant, by the words made use of, undertook and assumed to carry and deliver this package to its destination in Georgia. (*Read* v. *Spaulding*, 5 Bosw., 395; *Place* v. *Union Ex. Co.*, 2 Hilt., 19; *Am. Ex. Co.* v. *Hain*, 21 Ind. R., 4; *Wareham Bank* v. *Burt*, 5 Allen, 113; *Weed* v. *Sch. & Sar. R. R.*, 19 Wend., 534; *Quimby* v. *Vanderbilt*, 17 N. Y. R., 306; *Webber* v. *G. W. Railway Co.*, 3 H. & C., 771.)

The defendant undertook to carry this package of money to Dalton for a special purpose; to wit, for the redemption of the same by the bank issuing it. This was a part of the recognized business of an express company. As conducted and arranged in the present day, the carrier does much more than the unintellectual routine acts to which the business was formerly confined. He is now the skillful, reflecting, confidential agent of the employer. A valuable case of jewelry is entrusted to the carrier for transportation, but only to be delivered upon one of two conditions; to wit, that the consignee pays the value thereof in cash, or that the carrier is satisfied that he is perfectly responsible for the amount. The carrier is entrusted with the collection of a note, payable at a distant point, and of which an important part of the value arises from its indorsement by a responsible man. The duty

of the carrier is first to present the note to the maker or at the place indicated. If paid, the money is to be transmitted to the employer. If not paid, the further duty of protest and notice to the indorser devolve upon the carrier. These are now every-day contracts with express companies, are well understood, and are expressed by a single word. In the case before us the contract is of a similar character. The carrier is informed that the plaintiff has bank notes issued by a bank in Georgia, which he wishes to have presented for redemption. The carrier, for a compensation, is willing to undertake the duty. It is put in the form of a receipt, and this part of the contract is shown by the words " for redemption." Under the circumstances detailed, this amounts to an agreement to present this currency for redemption, to return the funds to the plaintiff, if redeemed, or to return him the notes, with the evidence of the refusal to pay in the event of non-payment. The bank is not a consignee. To deliver to a bank its own notes, and not require the equivalent, would be the reverse of a redemption. The essential idea of redemption of currency is that the party issuing it is a debtor, and is called upon to pay his debt by redeeming the notes presented. I think no two business men of fair understanding would disagree as to the meaning of this contract, and I doubt not that both the plaintiff and the defendant, at the time of making the contract, understood it to be as I have explained it.

Upon the whole case, I think the judge at the circuit was right, that the order for a new trial should be reversed, and that judgment should be entered for the plaintiff upon the verdict, with costs.

EARL, C., concurs with GRAY, C., upon question as to construction and effect of contract, but differs with him and concurs with HUNT, C., upon the question as to the competency, as evidence, of the entry upon defendant's books.

For affirmance, GRAY, EARL, LEONARD, CC.

For reversal, LOTT, Ch. C., HUNT, C.

Order affirmed, and judgment absolute against plaintiff, with costs.