By the Court—Woodruff, J.
It was admitted on the trial of this action that the goods in question were delivered by the plaintiffs and received by the defendant at the citj of Hew York, under the contract set forth in the case and called a bill of lading.
By that instrument, the defendant declares that he received the goods to be forwarded to the place named in the bill of lading, Louisville; and that all property shipped on that bill of lading will be delivered at the depots of the Company or steamboat landing; and in providing against liability for deficiency in packages, it is agreed that no such liability shall exist if the goods “ are delivered at Louisville depot in good orderand the stipulation in respect to amount of freight plainly embraces the compensation to be made to the defendant for the entire transportation from Hew York to Louisville.
The admission on the trial that the defendant received the goods in connection with this contract, imports that the expression, “ Spaulding’s Express Ereight Line” and “ Spaulding’s Express,” mean the defendant, M. B. Spaulding.
’ I. Upon these facts we have no hesitation in saying that the defendant undertook to carry the goods, and was not a mere forwarder whose duty consisted only in receiving and delivering the goods to others to be carried.
The observations made in The Mercantile Insurance Company v. Chase, (1 E. D. Smith, 121,) where goods were delivered and received under a contract in terms very similar to that before us, are apt to express our views of the present case on this point.; and Wilcox v. Parmelee, (3 Sandf. S. C. R., 610,) is to the like effect. The use of the term “ forward ” in the contract is controlled by the nature and extent of the actual undertaking, and did not make the defendant a forwarder in the technical sense of that word. An agreement “to forward from Hew York to Louisville” embraced carriage. It became the duty of the defendant to deliver the goods at Louisville. Whether the ■defendant used the term “carry,” or “ transport,” or “forward,” *405 the goods from New York to Louisville is wholly immaterial, so long as he undertook the reception of the goods here and their1 delivery there. His duty embraced everything necessary to be done to accomplish a delivery of the goods at the place designated, and the compensation stipulated for in the contract was an expressed equivalent for the whole service. Whether the defendant used his own means of transportation in the service to be performed, or made his own private arrangement with others to perform the actual transportation, did not affect his relation to the owners of the goods with whom he had agreed to receive and deliver them. The fact proved, viz.: “that the defendant had no interest in or control over any of the routes or railroads mentioned in the said bill of lading, over which said goods were transported,” does not therefore affect the relation of the defendant to the plaintiff in this respect, since the defendant assumed to deliver, and it thereby became his duty to provide the means; and because, also, the bill of lading did not, expressly or by implication, specify any such routes or railroads otherwise than simply to say that the goods should be carried “ via Indianapolis.”
Again, the provision that in case of loss from any cause for which Spaulding’s Express should be liable, they shall have the benefit of any insurance thereon, and in case of loss on the lakesj. the freight and charges to or at Buffalo shall be paid by the owner, plainly shows that the defendant’s own understanding of' the contract contemplated liability for loss-in the course of transportation, which is obviously inconsistent with the claim now made that his duty was performed and his liability terminated by a mere delivery to others to be carried.
The only case in which a contrary doctrine has been held, is Hersfield et al. v. Adams et al., (19 Barb., 577, N. Y. Special Term,) and there the decision is mainly placed on the ground that the defendants were, by special contract, relieved from liability for the cause of loss there proved. So far as it declares that the defendants were not common carriers, the foregoing reasons forbid our concurrence therein.
II. The next and only other question urged upon our attention by the counsel for the defendant, is whether the injury to the goods happened under circumstances or from causes for which the defendant is responsible.
*406 Unreasonable and unexcused delay in the transportation, and actual injury resulting therefrom, are the grounds upon which it is sought to charge the defendant.
By the agreement of the parties made on the trial, it is conceded that the actual injury arose from the goods being wet in the railroad depot at Albany; that the goods were, when wet, upon a floor in the depot at such an elevation above high water mark that goods thereon would not be injured by any flood such as had ever before occurred in the Hudson river at Albany; that the flood by which they were in fact injured, was a sudden rise in the water of the river, during the night, some four feet higher than it had ever risen before; that there was no negligence or omission of duty on the part of the defendant in not anticipating the occurrence of the flood; and that from the time it was apparent that there would be a rise of water, the goods could not have been prevented from being wet as they were.
Under this admission it is clear that if the defendant was without fault in exposing the goods to the action of the flood, he is not liable for the injury arising therefrom. If, in the due discharge of his duty, he had the goods in the regular and usual course of transportation, so that their being in the depot at the time was proper, then injury by the action of an extraordinary flood, rising higher than any flood had ever risen before, which it was no negligence or breach of duty not to anticipate, and from which, when the rise of water became apparent, the goods could not be delivered, is an injury by the act of God in such sense that the carrier is excused.
But the defendant had violated his duty and broken his contract, and was under the actual pressure of fault and neglect, without which the goods would have been safe.
The goods, in all consisting of eighty-six cases, were delivered to the defendant on the 27th day of January, 1857, to be carried and delivered to the plaintiff at Louisville. Eighty-one of these cases were carried and delivered within twelve or fourteen days after they were received in Hew York; that is to say, they reached Louisville on the 8th or 10th of February.
It was the duty of the defendant to deliver all the goods within a reasonable time, and according to the usual course of business over the route by which they were to be transported. There is *407 nothing in the case to indicate that the eighty-one cases which were so delivered were forwarded with any extraordinary or unusual speed, but the proof is that from, ten to fifteen days is the usual time of conveyance. The presumption is, therefore, that if the defendant had performed his duty the five cases, which are the subject of controversy, would have reached Louisville at or about the same time with the others.
But these five cases were brought from the depot of the Western Railroad to the depot of the Central Railroad, at Albany, on Saturday, the 7th of February, when, as before suggested, they ought to have been at or near their destination, Louisville, Kentucky. Whether this delay arose from the detention of the goods in New York, or at the depot of the Western Railroad, or at any intermediate point, is not stated. Nor is any explanation of the cause of delay given or attempted; while it is agreed'that freight cars run daily from New York to Albany on the road by which these goods were to leave New York. If any explanation of this delay could be given, it was the duty of the defendant to give it. Enough was shown to east the burden of proof upon him. He had undertaken to carry, and the delay was, prima facie, not only unreasonable, but apparently the result of gross negligence and want of attention, either in not beginning the carriage in due time or in delaying the progress of the goods after the transportation’ was begun. It is not for the defendant to require that the plaintiffs should show the cause of the delay.
The result is, that the defendant was grossly negligent in the performance of his duty; this delay was a breach of his contract to carry and deliver within a reasonable time; and while so in fault, the goods in his charge were, in the night of Sunday, the 8th, or on the morning of the 9th of February, reached and inj ured by the extraordinary flood already mentioned.
But the defendant insists that, if the defendant was in fault in respect of the delay which had occurred, he is, nevertheless, not liable for the damage complained of; that, in such case, though the carrier be liable for delay, he is only liable for the immediate consequences of delay: by which he is understood to claim that he is liable only for such damages as the plaintiffs sustained irrespective of the injury to the goods by being wet in the flood at Albany; and, therefore, his damages are to be ascertained by *408 assuming, for the purposes of the assessment, that the goods arrived safely, though not until long after the time when they should have been delivered.
This claim rests upon the ground that the delay was not the proximate cause of the injury. “ Causa próxima non remota spectatur."
The delay certainly did not cause the flood. But we think that the defendant cannot find protection in this view of his responsibility. His unexcused neglect of duty did expose the goods to the peril; and when the defendant was found in actual fault, he lost the protection from liability by inevitable accident which the law extends to the carrier in the due performance of his undertaking. From the moment his faulty negligence began, he became an insurer against the consequences which might result therefrom, whether ordinary or extraordinary.
It is true that, in Morrison v. Davis, (20 Penn. R., 171,) where goods carried in a canal boat were injured by the wrecking of the boat caused by an extraordinary flood, it was held that the carriers were not rendered liable merely by the fact that, when the boat was started on its voyage, one of the horses attached to it was lame, and that, in consequence thereof, such delay occurred as prevented the boat from passing the place where the accident happened, beyond which place it would have been safe. In considering the question, the Court liken the carrier to an insurer against loss by perils of the seas, who are said to be not liable for a loss immediately arising from another cause, although, by perils of the sea, the ship had sustained an injury without which the loss would not have taken place.
Possibly a question might be suggested whether, in that case, the mere fact that one of the horses was lame was enough to charge the defendants; but it must be conceded that, in the view taken by the Court, the case is strikingly like the present. We are, nevertheless, constrained to say, that, in so far as the principle of the decision tends to exonerate the present defendant, we cannot give it our assent.
A common carrier, in order to claim exemption from liability for damage done to goods in his bands in course of transportation, though injured by what is deemed the act of God, must be without fault himself: his act or neglect must not concur and con *409 tribute to the injury. If he departs from the line of duty and violates his contract, and while thus in fault, and in consequence of that fault, the goods are injured by the act of God, which would not otherwise have caused damage, he is not protected.
The defendant was bound -to deliver the goods in a sound condition. If prevented by the act of God, he is excused; but if his own misconduct contributed to the injury by exposing the goods needlessly or improperly to the peril, his excuse fails. All ordinary perils from even the act of God he was, even while engaged in the faithful performance of his duty, bound to foresee and guard against by the exercise of a care and diligence proportioned to the danger. He was not bound to anticipate and guard against extraordinary perils which human foresight would not anticipate; but it was his duty to do nothing which should expose the goods to any perils which would not arise in the proper and diligent prosecution of the journey which he had undertaken. And if he, by needless delay, subjected the goods to damage, from whatever cause concurring or cooperating therein, he is liable.
This we believe to be in accordance with sound policy, just in its operation, and sustained by the weight of authority.
Thus, if a carrier by water deviates from his voyage and the ship and goods are lost, he is liable, although the loss was by a peril of the sea. He is not at liberty improperly to encounter mischief, even from such a cause. In principle, it can make no difference whether his deviation is intentional or negligent; it is sufficient that he is in fault, and that subjects him to liability.
So, where a carrier by land deviated from the direct and principal route, and the goods were lost by a cause which might, had he been without fault, have excused him on the score of inevitable accident, he was held liable because the loss happened in consequence of his own improper conduct: he had no right so to deviate.
The observations of TlNDAL, Oh. J., in Davis v. Garrett, (6 Bing., 716,) apply with much force to the present case. There the carrier had deviated from his voyage, and a loss occurred by a peril of the sea. He says: “Ho wrongdoer can be allowed to apportion or qualify his own wrong; and as a loss has actually happened while his wrongful act was in operation and force, and which is attributable to his wrongful act, he cannot set up, as an *410 answer to the action, the bare possibility of a loss if his wrongful act had never been done. It might admit of a different construction if he could show, not only that the same loss might have happened, but that it must have happened, if the act complained of had not been done.”
In Williams v. Grant, (1 Conn. R., 492,) the true rule is stated as we think, and it covers the present case; after stating the exemption of carriers from liability for losses caused by inevitable accident, G-ould, J., says: “It is, however, a condition precedent to this exoneration that they should have been in no default; or, in other words, that the goods should not have been exposed to the peril or accident which occasioned the loss by their own misconduct, neglect or ignorance. For, though the immediate or proximate cause of á loss, in any given instance, may have been what is termed the act of Grod, yet, if the carrier unnecessarily exposed the property to such accident by any culpable act or omission of his own, he is not excused.” (See also 12 Conn. R., 410; 4 Wharf, 204; Harp. [S. C.] R., 262, 468; Wilcox v. Parmelee, 3 Sand., 610.)
The defendant is, we think, liable, and the plaintiffs were entitled to recover.
A point was suggested on the hearing of the exceptions, though not argued by the counsel, relating to the amount of the damages. An entry on the margin of the contract, called the bill of lading, was in these words: “Ho risk taken over $200 on any single package.” One of the five cases which were injured contained seventeen packages, and the damage to the whole seventeen packages amounted to $438.88. It is claimed that no more' than $200 should be allowed for the injury to the whole seventeen packages.
It is obvious that, according to the very terms of the memorandum, $200 being allowed on any single package, that sum might, within the provisions of the contract, be allowed on each of the seventeen packages, unless the word “ package ” is used in a different sense in the statement of the facts agreed upon by counsel, from its meaning in the contract, which forms a part of that statement. This we cannot say.
Again, the packages thus forming one case were inclosed in a rough box, having openings through which the packages could *411 be seen. The defendant, therefore, knew when he was receiving the case that he was receiving several packages, though inclosed. It does not seem to us that securing several small packages in this manner, so that they were more conveniently carried, when the carrier knew, or might, by ordinary inspection, have known that he had received, not one single package, but seventeen small packages, should render the liability of the defendant any less than it would be if the seventeen packages had been separately delivered.
And, finally, on this point we incline to the opinion that the term risk, in the memorandum in question, has reference to perils which occur without the actual fault of the defendant, and do not exempt him from liability for losses resulting from his actual negligence.
The plaintiff should have judgment on the verdict.
Ordered accordingly.