Ashburn, J.
It is assigned for error in this court: 1. That the court aforesaid, on the trial of said cause at special term, erred in its charge to the jury ; .... 4. That said court, at general term, erred in affirming the judgment aforesaid.
In the view we have taken of the questions involved, the case will be disposed of in considering the exceptions taken by plaintiff in error to the charge of the court to the jury.
1. It is said the court below erred in assuming in its charge to the jury that the defendant below was a common carrier.
The court below, in its charge to the jury, did so assume, and among other things said to the jury : “ Without stating all the arguments for this conclusion, I may state that this *150 company can not stipulate against its own negligence, Such a stipulation would be contrary to public policy. But in all other respects a common carrier may limit his liability in case of loss by special contract.
If the defendant was a common carrier, the above instruction is law. It has been settled by a line of well-considered cases in this state, that common carriers can not,, by any agreement with their employers, exempt themselves from liability for loss occasioned by their own negligence, or the negligence of their servants. Davidson v. Graham, 2 Ohio St. 132; Graham & Co. v. Davis & Co., 4 Ohio St. 362; Welsh & Welsh v. P. Fort W. & C. R. R. Co., 10 Ohio St. 65; C. P. & A. R. R. Co. v. Curran, 19 Ohio St. 1; The Union Express Company v. A. A. Graham, 26 Ohio St. 595.
In Railroad Company v. Lockwood, 17 Wall. 357, the-Ohio doctrine is fully recognized,' the court holding, “ 1, A common carrier can not lawfully stipulate for exemption from responsibility when such exemption is not just and-reasonable in the eye of the law. 2. It is not just and reasonable in the eye of the' law for a common carrier to-stipulate for exemption from responsibility for - negligence-of himself or his servants.”
Was the defendant below a common carrier ?
“A common cai'rier has been defined to be one who undertakes for hire or reward to transport the goods of such as choose to' employ him from place to place.” ' Story on. Bailments, 443.
“ To constitute one a common carrier he must make that a regular and constant business, or, at all.events, he must for a time hold himself ready to carry for all persons indifferently who choose to employ him.” 2 Redfield on the Law of Railways, 3,' 4.
A common carrier, then, is one that undertakes for hire • or reward to carry, or cause to be carried, goods for all persons indifferently who may choose to employ him or it-from one place to another.
Transportation by express companies has come into practice very much since the general use of railways for *151 transportation purposes. It seems more necessary on account of the rapid movement upon such roads, and also the mode in which business is generally transacted by railway companies of only delivering at their stations. The express company uses its wagons in large cities to collect and deliver goods to the owners and consignees. They also have their agents at various stations along the line of transportation to receive and deliver goods.
In treating of the rights and duties of express carriers, Mr. Redfield on Railways, p. 33, says: “And there can be no question that, upon general principles, these expresses are liable as common carriers, and liable, according to the course of their business, and the expectation thereby created in the mind of their employers, for all parcels received into their wagons, and bound to make personal delivery to-the consignees or their agents, at their places of business,, or, in default of having such, at their residences.”
Numerous authorities hold this to be the rule. Haslam v. Adams Express Co., 6 Bosw. 235; 23 Ill. 197; 5 Bosw. 395; Place Jr. v. Union Express Co., 2 Hitton, 19; Gulliver v. Adams Express Co., 38 Ill. 503; Richards v. Westcott, 2 Bosw. 589; Hooper v. Wells, Fargo & Co., 27 Cal. 1; Southern Express Co. v. Newby, 36 Geo. 635; Buckland et al. v. Adams Express Co., 97 Mass. 124.
In this last case it was held, and we think correctly, “ One whose business is for hire to take goods from the custody of their owner, assume entire possession and control of them, transport them from place to place, and to deliver them at a point of destination to consignees or agents there authorized to receive them, is a common carrier, although he styles himself an express forwarder, and, although he contracts with others to transport the goods in vehicles of which they are the owners, and the movements of which he himself does not manage or control.”
The bill of lading shows, we think, that the defendant below was a common carrier. It was in the market soliciting public patronage, offering to cause goods to be transported from place to place for reward for all persons indif *152 ferently, and did agree with the plaintiff below, as the proprietor of the Great Western Dispatch, for reward, to carry the whisky named in the bill of lading from Cincinnati to New York by way of the Cincinnati, Hamilton and Dayton, Atlantic and Great Western, and Erie Railways. It shows the goods to be carried were received by the express company at Cincinnati, and to be delivered at New York. It was stipulated, “ this contract is executed and accomplished, and the liabilities of the companies, as common carriers thereunder, terminates on the arrival of the goods or property at the station or depot of delivery.” The sense of this is that the liability of the United States Express Company; that the liability of the Cincinnati, Hamilton and Dayton Railway Company, and each of the other railway companies over which the goods were to be carried as common carriers, would continue, and not be discharged until the goods were delivered at the depot of the Erie Railway in New York — the rule being that express companies can not relieve themselves from responsibility otherwise than by delivering the property at the place designated in the bill of lading..
The following provision in the bill of lading is equally significant in showing the express company to be a common carrier:
“And it is further agreed, that the Great Western Dispatch, and the steamboats, railroads, and forwarding lines with which it connects, shall not be held accountable for any damage or deficiency in packages after the same shall have been receipted for in good order by consignee,or their agents, at or by the next carrier beyond the point to which this bill of lading contracts. Consignees are to pay freight and charges upon said goods or merchandise in lots or parts of lots as they may be delivered to them.”
The legal force of this provision is to render the United States Express Company, as the owner of the Great Western Dispatch, responsible, as a common carrier, for any damage or deficiency in packages delivered to its care until receipted for by the consignee or their agents, or by the *153 next carrier who shall receive them to carry beyond the point to which the bill of lading contracts — in this case, at the City of New York.
A still further evidence that the defendant below was a common carrier appears in this :
“ It is further stipulated and agreed', that in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, the Great Western Dispatch shall have the full benefit of any insurance that may have been effected upon or on account of said goods.”
We think the express company stipulated that they should have the benefit of any insurance on the whisky in ■case of its loss, detriment, or damage during transportation, for the sole reason that it regarded its undertaking, in that behalf, to be that of a common carrier.
It is claimed that plaintiff'in error should not be held to strict liability as a common carrier, for the reason that the contract for carriage is essentially modified by the mode in which it undertook the performance of the service. The ground upon which this defense rests is, that express carriers over railroads to which they have no official relation, can not, from the very nature of the ease, exercise any care or control over the means of transportation which they, from the necessity of the case, adopt; that carriages m which the goods intrusted to them are placed, and the agents and servants by whom they are managed, are not selected by them, nor subject to their direction or supervision.
We think this defense, and the reasoning to support it, unsound. The essence of the contract is that the contractors will cause the goods intrusted to their care to be safely carried to the place of their destination, unless this is prevented by the act of God or the public enemy. This is the contract, whether the property is to be transported by the express company itself or agencies employed by it. The contract does not imply a personal trust, but contem *154 plates only that the -property shall be safely and in good order carried to the designated destination.
We hold, then, that this express company was a common carrier, and the court did not err in so assuming and charging.
The next error assigned is in that part of the charge to the jury, in which they were instructed that the clause in the agreement limiting the liability in case of loss to a valuation of “ $20 ” per barrel, was void, and that if the plaintiff was entitled to recover at all, his damages should be computed upon the basis of the full actual value of the goods not delivered.
The court charged the jury on this point, as follows : “It has already been stated to you that the alleged restriction of liability of the defendant in ease of a loss of the property shipped, contained in the bill of lading by the insertion of the words, ‘ subject to the $20 clause,’ is void. Without stating all the arguments for this conclusion, I may state that this company can not stipulate against its own negligence. Such a stipulation would be contrary to public policy. But in all other respects a common carrier may limit his liability in case of less by special contract. If the defendant lost this whisky by its own negligence, it can not restrict its liability to $20 a barrel, if, as may be admitted, it was advised of the nature and value of the article to be transported, and if this whisky was, in fact, worth more than $20 a barrel at the time.”
We find in the bill of exceptions “it was admitted by the defendant that the whisky in question, at the time and place of shipment, was of much greater value than $20 per barrel, and that the defendant knew that fact at the time.”
The defendant also offered evidence to show that, according to the general custom of the trade and business prevailing in Cincinnati, known to dealers in and shippers of whisky, and to those engaged in the transportation thereof from the west to the east, that whisky was classified both as second class and fourth class freight — -the classification as fourth class, based on the consideration that when carried *155 as such, it was agreed to be of the value of not to exceed $20 per barrel, in.consideration of which the rate charged' as freight for its transportation was about the average one-third of the rate charged for its transportation as second class freight; that it was at the option of shippers to select either classification, paying the rate accordingly, but that the general practice of shippers was to select the classification as fourth class, on account of the lower rate, and that the advertisement on the bill of lading of the words, written on the face thereof, “ subject to the $20 clause,” meant that the shipment was as fourth class freight, and that in the event of loss, for which the carrier was liable, the-amount of damage recoverable should be limited to the-valuation of $20 per barrel.
The defendant also offered evidence that the freight charged for the shipment in the case was the customary rate at the time for fourth class freight.
This is not a new question. An exemption of this character was made and decided against a common carrier in 1812, in the case of Beck et al. v. Evans et al, 16 East. 243. The carrier gave notice he would not be answurable for-cash, etc., or any other goods of what nature or kind soever above the value of £5, unless upon special agreement and adequate compensation, “ unless a special agreement is made- and an adequate premium paid.” The goods he received and lost was a cask of brandy worth £70. It was held that from the bulk and nature of the goods the carrier was charged with knowledge, and must have known the goods to be of greater value than £5, and when lost by reason of' his negligence he was responsible for the full value of the goods lost.
The Ohio cases hereinbefore cited make it clear that common carriers can not, by contract, exempt themselves from liability for full damages for a loss occasioned by their own negligence or that of their servants. No more can they legally stipulate for a partial exemption from liabi lity caused by like negligence. The public policy that avoids a contract for total exemption, will hold a contract void that *156 provides for partial exemption in such case. The fact that by reason of such contract the carrier undertook the transportation of the goods for a diminished reward will avail him nothing.
We do not think the parties contemplated a double rule for determining a compensation for loss or damage. And yet if the twenty-dollar clause is to be the rule of compensation in case of loss, it is in direct conflict with the following rule for compensation set out in the bill of lading: And it is further agreed, that the amount of the loss or damage so accruing, so far as it shall fall upon the carriers above described, shall be computed at the value or cost of the said goods or property at the place and time of shipment under this bill of lading.
“ To permit carriers to fix a limitation to the amount of their liabilities for negligence is, in effect, to permit them to exempt themselves from such liability.” Steamboat City of Norwich, 4 Benedict, 271.
Carriers may by contract limit their liability, at common law, for damages or loss arising from other cause than negligence of themselves or their servants. They can not, however, as liquidated damages, where it is understood by the parties the sum agreed on is less than the valúe of the goods, determine in advance the quantum of damages for loss occasioned by negligence.
Courts could, probably, in a proper case, give effect to and apply for the benefit of the carrier the phrase in the bill of lading, “ subject to the $20 clause,” but not in a case like this, grounded wholly on the carrier’s negligence.
As applied in this case to the question of damages arising from negligence on the part of the common carrier, it could not be misleading to say to the jury a phrase on the bill of lading was void, which could, in no aspect of the •case presented for their consideration, avail the carrier anything whatever.
It is claimed the court erred in the charge to the jury as to the burden of proof and degree of care the express company was bound to exercise-.
*157 The court on this question said to the jury : “ The burden of proof to establish the fact of the exercise of due care is upon the defendants. The mere non-delivery of the whisky to the consignee is presumptive evidence of loss by negligence. The law exacts of a carrier a high degree of' care ; yet if you shall be satisfied from the preponderance of the evidence that the defendant exercised all reasonable care, and that the loss was occasioned by causes over which it had no control, and not from its own neglect or omission of duty, your verdict must be for the defendant.”
We find no error in this. It was a fair presentation of the law as administered iu this state. The rule is, we think, founded in sufficient reason and sound public policy. A short time since the Supreme Court stated the rule, in the case of the Union Express Co. v. Graham, 26 Ohio St. 595, in these words:
“ When a common earner claims immunity for the loss-of goods with which he has been intrusted, on the ground that such immunity is secured by a special agreement, the burden is on him to prove that the loss was occasioned without his fault.”
We have been requested to review this doctrine, in view of such respectable authorities as hold the contrary to be the true rule. We think the weight of authority is in accord with the holding in Ohio, and we do not think public interests would be advantaged by a change of the rule.

The judgment of the Superior Court of Cincinnati in special and general term affirmed.