JAMES GRINDLE, administrator, *vs.* EASTERN EXPRESS COMPANY.

Hancock. Decided December 28, 1877.

*Carriers.*

The plaintiff's intestate delivered to the defendants' agent at Castine $24.90 to be forwarded to Belfast and there delivered to one Beale, agent of the Continental Life Insurance Company. The money was sent for the purpose of paying the intestate's semi-annual premium on his life-policy, which would by its terms lapse if premium was not paid on or before eight days thereafter; of all which the defendants' agent had notice, but failed to deliver the money.

*Held,* that primarily the defendants would be liable in damages for the net value of the policy on the day it lapsed, both parties having presumably contemplated such damages from knowledge of the circumstances.

Also, *held,* that it was incumbent upon the plaintiff's intestate to use ordinary care and take all reasonable measures within his knowledge and power to re-instate himself with the insurance company or to re-insure, and that he cannot recover damage for such loss as he might have thus prevented.

CASE, for negligence, brought by the plaintiff as administrator of the estate of Emery R. Wardwell against the defendant company for negligence in forwarding the sum of $24.90 which was delivered to one Charles W. Tilden, agent of the defendants at Castine, May 8, 1873, to be forwarded to F. H. Beale at Belfast, Maine, agent of the Continental Life Insurance Company of the city of New York. The said sum of $24.90 was for the semi-annual premium due April 15, 1873, to be paid according to the regulations of the said company within thirty days of that date. It is alleged by the plaintiff:

That said sum of $24.90 was not forwarded and delivered to the said F. H. Beale, but was delayed by the defendants from May 8, 1873, until September 8, 1874, and in consequence of said delay, said life insurance policy lapsed and became void.

That said policy was dated and sealed April 15, 1870, by which said insurance company "do assure the life of Emery R. Wardwell of Penobscot, in the county of Hancock, state of Maine, for the sole use of Emery R. Wardwell in the amount of one thousand dollars, for the term of sixteen years from the date of this policy or until his decease, in case of his death before that time. And the said company do hereby covenant and agree to and with said assured, well and truly to pay or cause to be paid the said sum insured to the said assured within ninety days after the said Emery R. Wardwell shall have been insured for sixteen years as aforesaid, or in case he should die before that time, then to Edna N. Wardwell (wife) if living, otherwise to the legal representatives of the said assured, within ninety days after due notice and satisfactory evidence of his death."

That August 22, 1874, the said Emery R. Wardwell lost his life by drowning, whereby as the plaintiff alleges, the said Continental Life Insurance Company would have been liable to pay and would have paid said sum of $1000, to the estate of said Emery R. Wardwell, if said policy had not lapsed and become void by non-payment to said company of said semi-annual premium due within thirty days from said 15th day of April, 1873.

The following is a copy of the receipt given by the agent of the defendant company at the time the money was delivered:

"Eastern Express Company. Castine, May 8, 1873. Received of E. R. Wardwell, twenty four 90-100 dollars directed F. H. Beale, agent, Belfast, which the Eastern Express Company agree to forward and deliver at destination if within their route, and if not, to the connecting express, stage or other means of conveyance, at the most convenient point, and to be responsible for such delivery to the amount of fifty dollars only, unless value is stated above. It is further agreed that they shall not be held responsible for any loss occasioned by fire or the dangers of railroad, steam or river navigation, or for the breakage of glass or other fragile

goods, or for money put inside of a box or bundle. For the Eastern Express Co. (Signed) C. W. Tilden."

The plaintiff claims that at the time the money was delivered to Tilden, Tilden was informed and knew for what purpose it was sent to Beale. This claim the defendants deny and they also claim that on the next day after receipt of the money they delivered the same to the usual means of conveyance between Castine and Belfast for transportation to Belfast.

The following questions are submitted for the consideration of the court.

1st. Is an action on the case for negligence the proper form of action ?

2nd. Should the action have been brought in the name of the administrator of Emery R. Wardwell's estate, or in the name of Edna N. Wardwell, the widow ?

3d. If case is the proper remedy, and the action is correctly brought in the name of the administrator and the action is maintainable on the facts as claimed by the plaintiff, what would be the measure of damages against the express company ?

4th. If the money was on the next day after its receipt delivered to the usual means of conveyance, and was afterwards lost or missing, can the defendants be held in any form of action ?

If the action is not maintainable by reason of form of said action or by reason of its being brought in the name of the administrator and no amendment can be allowed, then a nonsuit is to be entered. Otherwise the action shall stand for trial.

*A. Wiswell & A. P. Wiswell*, for the plaintiff.

*F. A. Wilson & C. F. Woodard*, for the defendants.

VIRGIN, J. On April 15, 1870, the Continental Life Insurance Company assured the life of the plaintiff's intestate for his sole use, in the sum of one thousand dollars, for the term of sixteen years or until his decease in case of his death before that time; and the company, by their policy under seal, of that date, did covenant with the assured, to pay him the sum insured within ninety days after he shall have been insured the term mentioned, or in case he should die before that time, then to his wife Edna, if living, otherwise to the legal representatives of the assured.

Being an endowment policy for sixteen years, it was primarily intended to be for the benefit of the assured himself. And being a covenant under seal, no one but the assured or his legal representative could maintain an action upon it, he being the only party in whom the legal interest was vested. *Hinkley* v. *Fowler,* 15 Maine, 285. *Flynn* v. *North Am. L. Ins. Co.,* 115 Mass. 449.

This is not an action against the insurance company for a breach of any covenant contained in the policy; but an action on the case against the defendants as common carriers of goods, for an alleged violation of their duty in failing to seasonably deliver to one Beale, of Belfast, agent of the insurance company, a certain sum of money sent through them by the plaintiff's intestate on May 8, 1873, for the purpose of paying his semi-annual premium due on his policy May 15, 1873.

The defendants do not deny their receipt of the money in the capacity mentioned. Being such carriers, and their general obligation depending upon their public profession (*Johnson* v. *Midland Railway Co.,* 4 Exch. 367,) they were bound, in the absence of any special agreement, to receive the money and carry and deliver it, within a reasonable time, at whatever place directed within the route which they hold out to the public as theirs, and no further. There, their common law liability ceases. *Perkins* v. *Portland, S. & P. Railroad,* 47 Maine, 573, 589. *Hales* v. *London, & N. W. Railway,* 4 B. & S. Q. B. 66, (116 E. C. L. R.) They might contract to carry further to any point beyond their regular line; or might simply undertake to deliver to a connecting carrier; in which latter event their liability would cease with a safe carriage and prompt delivery; for they would then have done all the law and all their contract required. *Perkins* v. *Portland S. & P. Railroad, supra.* *Skinner* v. *Hall,* 60 Maine, 477. *Plantation No.* 4 v. *Hall,* 61 Maine, 517.

The proof of a contract for carriage beyond their route should be clear. *Nutting* v. *Conn. Railroad,* 1 Gray, 502. But it may be express or by implication; by direct or circumstantial evidence; by words, conduct or usage. *Gray* v. *Jackson,* 51 N. H., 9, 11. *Knapp* v. *U. S. & Can. Exp. Co.,* 55 N. H. 348, and cases *supra.* Receiving goods marked or directed to some point beyond their

regular route is not sufficient evidence of an implied contract to carry them to that place. *Pendergast* v. *Adams Exp. Co.*, 101 Mass. 120. Where the consignor accepts a special contract, it is no answer that he did not know its terms; for in the absence of fraud, imposition or deceit, he is conclusively presumed to understand its terms and legal effect. *Squire* v. *N. Y. Cen. Railroad*, 98 Mass. 239. *Grace* v. *Adams*, 100 Mass. 505. *Belger* v. *Dinsmore*, 51 N. Y. 166. *Snider* v. *Adams Exp. Co.*, 4 Cen. L. J. 175.

The defendants claim that Belfast is not within their route; that they made no contract, and neither by conduct nor usage created any obligation to deliver the money outside of their route; that Castine is the most convenient point on their line whence public communication is had with Belfast, and that they delivered the money the next day after its receipt to the usual means of conveyance between Castine and Belfast. If these facts appear at the trial, they will constitute a good defense. Any special contract in the premises must be shown by the plaintiff.

II. By the terms of the report, if the action is maintainable on the facts as claimed by the plaintiff, what is the measure of damages against the express company? "The plaintiff claims that at the time the money was delivered to the defendants' agent, he was informed and knew for what purpose it was sent to Beale."

Upon this hypothesis we are of the opinion that primarily the defendants would be liable for the net value of the policy on May 15, when it lapsed and became void, qualified as hereinafter mentioned. It had a surrender value which the company would have paid. It could have been assigned by the consent of all concerned. Then the assured—for whose sole benefit it was primarily issued—was alive. The wife was no party to it. She simply had an equitable interest therein depending upon the contingency of her husband's decease prior to May 15, 1886, and the seasonable payment of the semi-annual premiums to the date of his death. When the policy lapsed, the contingency of his death had not occurred, and the assured alone was injured.

The general rule of damages in an action on the case against a common carrier for the non-delivery of goods is their value when and where they should have been delivered, with interest thereon

from that date; and if money be the article transported, the measure of damages is the principal sum with interest. So where the delivery is negligently delayed, the carrier is liable for the diminution in their market value, which occurred during the delay. *Weston* v. *Grand Trunk Railway,* 54 Maine, 376. Although this rule includes such profits as depend upon market values, it excludes all such uncertain, contingent profits as may result merely from a private or special speculation, especially when they are the subject of some collateral undertaking. *Bridges* v. *Stickney,* 38 Maine, 361.

While this is the general rule in the absence of special stipulations, it may be modified by circumstances. The courts in England as well as in this country have adopted substantially the doctrine of the civil law, and applied it alike to breaches of contract and violations of duty. "When the debtor," says Pothier, " cannot be charged with fraud, and is merely in fault for not performing his obligation, . . he is only liable for the damages and interest which might have been contemplated at the time of the contract ; for to such alone the debtor can be considered as having intended to submit. In general the parties are deemed to have contemplated only the damages and interest which the creditor might suffer from the non-performance of the obligation in respect to the particular thing which is the object of it, and not such as may have been incidentally occasioned by it. . . . Sometimes the debtor is liable for the damages and interest of the creditor, although extrinsic ; as when it appears they were contemplated in the contract, and that the debtor submitted to them either expressly or tacitly, in case of non-performance." 1 Poth. on Oblig. 161, 162.

Chancellor Kent also declared that "damages for breach of contract are only those which are incidental to, and directly caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties." 2 Kent Com. (12th ed.) 480* note.

So in this state Weston, J., said : "In general, the delinquent party is holden to make good the loss occasioned by his delinquency. But his liability is limited to direct damages, which,

according to the nature of the subject, may be contemplated or presumed to result from his failure. Remote or speculative damages, although susceptible of proof, or deducible from the non-performance, are not allowed." *Miller* v. *Mariners' Church,* 7 Maine, 51. This was reaffirmed in *True* v. *International Tel. Co.* 60 Maine, 9, 25. *Bartlett* v. *W. U. Tel. Co.* 62 Maine, 209.

The leading and famous case upon this subject in England is *Hadley* v. *Baxendale,* (9 Exch. 353, 26 Eng. L. & Eq. 398) decided in 1854. In that case Alderson, B., said : "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising naturally; *i. e.,* according to the natural course of things from such breach of the contract itself; or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." The action was against a common carrier for negligent delay in delivery; and the rule here enunciated has been followed in numerous English cases against carriers, and of failure to deliver goods on contract of purchase, or to manufacture and deliver personal property, etc. many of which are collected in Field on Dam. 238 note. Blackburn, J., in *Cory* v. *Thames Iron Works, etc. Co.* L. R. 3 Q. B. 181, 186, stated the rule in brief, thus: "Damages are to be what would be the natural consequences of a breach under circumstances which both parties were aware of." And Lord Campbell said that the rule in *Hadley* v. *Baxendale,* merely affirmed what was to be found in 2 Kent Com. etc. *Smeed* v. *Foord,* 1 El. & El. 602, (102 E. C. L.)

The latest English case which has come under observation is *Simpson* v. *London & N. W. Railway Co.* (Q. B. Div.) 24 W. R. 294, (3 Cent. L. J. 203). The plaintiff attended agricultural fairs with samples of cattle spice, etc. of which he was the manufacturer. The defendants received these samples from the plaintiff's agent on a certain fair-ground to be forwarded, by a certain day named on the consignment note, to a certain other fair-ground when and where a cattle-fair was to be held. The goods did not

arrive until the fair was closed; and the court held that the plaintiff was entitled to recover the loss of profit he would have gained on the orders received through the exhibition of his samples at the show, and for his loss of time in waiting at the latter place for the arrival of the goods. Cockburn, C. J., said : "I think it is now settled that wherever the prospect of loss of profits was either expressly brought to the knowledge of the carrier, or the goods were received under such circumstances that he ought reasonably to have inferred their nature and destination, so that the use of them might be within the contemplation of both parties, then the plaintiff is entitled to recover damages for the loss of profits he would have made if the contract had been duly carried out."

The general rule in *Hadley* v. *Baxendale*, has been recognized and applied by the courts in most if not all of the states of this Union. *Cutting* v. *Gr. Tr. Railway*, 13 Allen, 381, 384. *Scott* v. *Boston & N. O. Steamship Co.* 106 Mass. 468. *Griffin* v. *Colver*, 16 N. Y. 489. *Hamilton* v. *McPherson*, 28 N. Y. 72. *Booth* v. *S. D. R. M. Co.* 60 N. Y. 487, 492, 493. Field on Dam. 241 *et seq.*, where many of the American cases are collected.

Therefore while the loss of another's money received for transportation by a carrier, without reasonable knowledge of the purpose for which it is sent, will lay the carrier under obligation merely to refund the principal sum with interest ; still, when it is seasonably sent for the specific purpose of paying the sender's premium on his life-policy which will lapse if the money be not paid at the particular time, and the carrier is reasonably informed in relation to the premises, and has a reasonable time to perform the duty undertaken, but negligently fails to perform it, the law will justly hold him primarily, at least, for the net value of the policy which lapsed in consequence of his negligence. From their knowledge of the special circumstances, both parties must be presumed to have contemplated such consequences when the money was deposited with the carrier.

We consider *Favor* v. *Philbrick*, 5 N. H. 358, a parallel case, where in consequence of the carrier's unreasonable delay in the delivery of the plaintiff's account against a third person, it became barred by the statute of limitations, the carrier was held

liable for the amount of the account. So where an express company received from the plaintiff a promissory note against a third person which they agreed to collect of the maker, but during the company's negligent delay in pressing the collection the maker failed and the note became worthless, the company were held for the amount of the note. *Knapp* v. *U. S. & Can. Exp. Co.* 55 N. H. 348. To the same purport see also *Parks* v. *Alta Cal. Tel. Co.* 13 Cal. 422. *Bryant* v. *Am. Tel. Co.* 1 Daly, 575.

III. But the law makes it incumbent upon a person for whose injury another is responsible, to use ordinary care and take all reasonable measures within his knowledge and power to avoid the loss and render the consequences as light as may be; and it will not permit him to recover for such losses as by such care and means might have been prevented. *Miller* v. *Mariners' Church, supra. True* v. *International Tel. Co. supra. Bartlett* v. *Western U. Tel. Co. supra.* The principle is illustrated by Shaw, C. J., in *Loker* v. *Damon*, 17 Pick. 284, where in trespass for removing a few rods of fence, the cost of repairing it, and not the injury to the following year's crop caused by cattle passing through the gap in the fence, was held to be the measure of damages in favor of the plaintiff who knew the fence was down. So where the plaintiff's cow was made dangerously sick by eating poisoned hay purchased of the defendant, it was held to be the duty of the plaintiff to employ the best remedies within her reasonable reach, at reasonable trouble and expense, to cure the cow. *French* v. *Vining*, 102 Mass. 132. See also *Eastman* v. *Sanborn*, 3 Allen, 594. *Sherman* v. *Fall Riv. I. Works*, 2 Allen, 524. *Scott* v. *Boston & N. O. Steamboat Co. supra. Sutherland* v. *Wyer*, 67 Maine, 69.

Same doctrine is held in New York, in *Hamilton* v. *McPherson*, 28 N. Y. 72, 77. *Milton* v. *Hudson Riv. Steamboat Co.* 37 N. Y. 210. *Baldwin* v. *U. S. Tel. Co.* 45 N. Y. 744, 753. And in Iowa, in *Mather* v. *Butler County*, 28 Iowa, 253. *Simpson* v. *City of Keokuk*, 34 Iowa, 568.

Some insurance companies are accustomed to re-instate the assured without expense in case of accidental lapse, especially when the policy, like the one in question, has run but a short time.

All will re-insure on payment of a premium based on increased age, if, on re-examination, the health of the assured remains unimpaired. Whether or not the assured made any effort of the kind, during the fifteen months he survived the policy, the case does not find. We think, however, it was incumbent on him to use the care and adopt all reasonable means in the premises known to him. And unless he can show some legal excuse for not doing so, such as want of knowledge, failure of health, failing circumstances of the company, etc., he should not recover damage for such loss as he might have thus prevented.

*Action to stand for trial.*

APPLETON, C. J., DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred