PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. BRYANT.

[No. 5,394.   Filed October 25, 1905.]

1. CONTRACTS. — *Carriers.* — *Railroads.—Bills of Lading.—Receipts.*—Where plaintiff delivered goods to a railway company to be carried to their destination and received from such company a receipt showing that such goods were received and that they were "to be shipped as per directions below, subject to the conditions and exceptions of the company's bill of lading," and no bill of lading was ever issued, such provision must be deemed as abandoned.   p. 341.

2. SAME.—*Carriers.—Railroads.—Receipts for Goods for Shipment.*—A receipt issued to plaintiff by a railroad company showing the company's receipt of plaintiff's goods, and that they were "to be shipped as per directions below," and also that such goods were directed to plaintiff at their destination, and showing the receipt of payment of money to such company, is not a contract and imposes no duty upon such company to deliver such goods any place.   p. 343.

3. SAME.—*Carriers.—Railroads.—Delivery to Points off of its Lines.*—A common carrier's duty is to deliver goods only upon its own lines, and it may contract against liability for losses occurring upon connecting carriers' lines.   p. 344.

4. SAME.—*Carriers.—Railroads.—Receipt of Goods Marked.— Presumption.*—Where a common carrier receives goods marked to their destination beyond its line, there is no presumption of a contract to deliver such goods at such destination.   p. 344.

Pittsburgh, etc., R. Co. *v.* Bryant—36 Ind. App. 340.

5. CONTRACTS. — *Oral.—Carriers.—Railroads.*—Where plaintiff asked defendant railroad company's agent the freight rate to the destination of his shipment and such agent told him the rate and plaintiff delivered goods consigned to such place and paid the freight, the question whether there was an oral contract for the shipping of such goods to their destination was for the jury. p. 345.

6. CARRIERS.—*Railroads.—Agents.—Authority to Ship to Point beyond Line.*—Where plaintiff delivered goods marked to a point beyond defendant railroad company's line and asked such company's agent the through freight rate and paid same, taking such company's receipt showing delivery of goods and that they were consigned to such destination and also showing the money paid, such facts wholly fail to show any authority, express or implied, of such agent to contract on behalf of defendant for such delivery. p. 347.

From Henry Circuit Court; *William O. Barnard,* Special Judge.

Action by William J. Bryant against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*John L. Rupe* and *L. P. Newby,* for appellant.

*Bundy & Morris* and *Nation & Beard,* for appellee.

ROBINSON, J.—Appellee sued for the value of certain household goods which he averred were delivered by him to appellant to be shipped by appellant from New Castle, Indiana, to appellee at Rockford, North Carolina, but which it is averred were either lost or destroyed by appellant, and never delivered to appellee. Judgment in appellee's favor. Overruling appellant's motion for a new trial, asked on the ground, among other things, that the verdict is not sustained by sufficient evidence, is the only question argued.

An agent of appellee's went to appellant's station agent at New Castle, Indiana, inquired the rate of freight to Rockford, North Carolina, and, being told the rate, paid the freight to Rockford, and offered the goods for shipment. Appellant's agent received the shipment, and issued to the shipper the following: "Form 13. Delivered to the Pittsburgh, Cincinnati, Chicago & St.

Louis ·Railway Company, New Castle, Indiana, Station, December 10, 1901, the following named articles or packages, marked and consigned as stated, to be shipped as per directions below, subject to the conditions and exceptions of the company's bill of lading. W. J. Bryant, shipper. Marks: W. J. Bryant, Rockport, North Carolina. Articles: 1 C. Stove. 1 Bbl. H. Hold. gds. 1 S. Mach. 1 W. Stand. 1 Rocker. 5 Stool Chairs. 1 H. Chair. 1 Child's Rocker. Paid $6.38. A. R. Sligar, Ag't." [Revenue stamp.] No other bill of lading was issued for the shipment. Rockford was beyond appellant's line. In regular course the shipment would go over appellant's line to Cincinnati, and there be transferred to the Cincinnati Southern Railroad, and by that company be delivered to another line, to be carried to its destination. The goods were all delivered to the Cincinnati Transfer Company, a common carrier, to be delivered to the Cincinnati Southern, and all, except the barrel of household goods, were received by that company. The deposition of the agent of the carrier at the point of destination of the shipment, taken May 28, 1902, states that none of the goods had been received, except the barrel of goods, which was received a short time previously to that date, and which was in a damaged condition. At the time of the shipment, appellant had a regular bill of lading which was the uniform bill of lading used by railroads, and which was read in evidence. This bill of lading contains, among others, a provision that no carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after the property is ready for delivery to the next carrier or to the consignee.

We can not agree with counsel that this so-called "bill of lading" became a part of the written receipt or contract through the reference thereto in the receipt or contract. A bill of lading is defined to be "A written acknowledgement by the common carrier of the receipt of certain goods and an

agreement, for a consideration, to transport and to deliver the same at a specified place to a person therein named or his order." 4 Elliott, Railroads, §1415. See *Union R., etc., Co. v. Yeager* (1870), 34 Ind. 1. According to this definition, one of the essentials of a bill of lading is an agreement between the carrier and shipper. No bill of lading other than that above set out was issued. No other agreement was made. Reference is not made in the written instrument to some other contract or agreement executed by the carrier and shipper. It will readily be seen that the reasoning through which a contract may be gathered from writings consisting of a protracted correspondence between the parties has here no application. *Wills* v. *Ross* (1881), 77 Ind. 1, 40 Am. Rep. 279. There was no other bill of lading to which reference could be made in the writing that was executed, and, as the carrier did not issue to the shipper any such bill of lading, it must be held to have abandoned that provision in the written instrument that was executed.

The writing that was executed, and which is above set out, when construed as a whole, is, in effect, a receipt for

2. certain goods received for the purpose of shipping them to a point named in the memorandum following the shipper's signature. There is no contract contained in this writing to ship the goods to the place designated, or to any other place. The company, as a common carrier, was bound to receive the goods for shipment, so that a contract to ship the goods to a certain point, and there deliver them to the consignee, can not be implied from the fact that it did receive them for shipment. It can not be construed to be a bill of lading, and manifestly was not issued as a bill of lading, as reference is made in this writing to the "company's bill of lading." The receipt is evidence of the fact that certain goods had been delivered to the carrier to be shipped to a place designated, and that the carrier's agent had been paid $6.38. The writing

itself furnished no evidence that the amount paid was the rate through to the place of destination, and the implication does not necessarily arise that it was the through rate. It is true, having received the goods for shipment, the implied obligation of appellant as a common carrier, arising from its relation to the public, rested upon it to ship the goods. But this implied obligation is limited by the termini of its own route, for the reason that a common carrier is not required to deliver goods at a point beyond its lines.

Appellant's legal duty as a common carrier is only commensurate with its franchise; that is, it is confined to its own line. For this reason it might make a valid special contract that it should not be liable for any loss which did not happen on its own line. *United States Express Co.* v. *Rush* (1865), 24 Ind. 403; *Erie R. Co.* v. *Wilcox* (1876), 84 Ill. 239, 25 Am. Rep. 451; *Mulligan* v. *Illinois Cent. R. Co.* (1873), 36 Iowa 181, 14 Am. Rep. 514; *Reed* v. *United States Express Co.* (1872), 48 N. Y. 462, 8 Am. Rep. 561; *Phifer* v. *Carolina Cent. R. Co.* (1883), 89 N. C. 311, 45 Am. Rep. 687; *Cincinnati, etc., R. Co.* v. *Pontius* (1869), 19 Ohio St. 221, 2 Am. Rep. 391; *Adams Express Co.* v. *Second Nat. Bank* (1871), 69 Pa. St. 394, 8 Am. Rep. 268; *Taylor* v. *Little Rock, etc., R. Co.* (1877), 32 Ark. 393, 29 Am. Rep. 1; *McCarn* v. *International, etc., R. Co.* (1892), 84 Tex. 352, 19 S. W. 547, 31 Am. St. 51, 16 L. R. A. 39; *Dunbar* v. *Port Royal, etc., R. Co.* (1891), 36 S. C. 110, 15 S. E. 357, 31 Am. St. 860.

Some of the states follow the English rule that the receipt of goods marked to a place beyond the line of the carrier who receives them implies a contract on its part to carry them to their final destination. But the Supreme Court of the United States and a majority of the state courts have declared the rule that the carrier is only bound, in the absence of a special contract,

to carry over its own route and safely deliver to the next connecting carrier. *Pittsburgh, etc., R. Co.* v. *Morton* (1878), 61 Ind. 539, 28 Am. Rep. 682; *Railroad Co.* v. *Manufacturing Co.* (1872), 16 Wall. 318, 21 L. Ed. 297; *Insurance Co.* v. *Railroad Co.* (1881), 104 U. S. 146, 26 L. Ed. 679; *Myrick* v. *Michigan Cent. R. Co.* (1882), 107 U. S. 102, 27 L. Ed. 325, 1 Sup. Ct. 425; *Elmore* v. *Naugatuck R. Co.* (1855), 23 Conn. 457, 63 Am. Dec. 143; *Grindle* v. *Eastern Express Co.* (1877), 67 Me. 317, 24 Am. Rep. 31; *Lawrence* v. *Winona, etc., R. Co.* (1870), 15 Minn. 390, 2 Am. Rep. 130; *Grover, etc., Machine Co.* v. *Missouri, etc., R. Co.* (1879), 70 Mo. 672, 35 Am. Rep. 444; *Knight* v. *Providence, etc., R. Co.* (1882), 13 R. I. 572, 43 Am. Rep. 46; *Hadd* v. *United States, etc., Express Co.* (1880), 52 Vt. 335, 36 Am. Rep. 757; *Wells* v. *Thomas* (1858), 27 Mo. 17, 72 Am. Dec. 228, and note; *United States Express Co.* v. *Rush* (1865), 24 Ind. 403; *Lake Erie, etc., R. Co.* v. *Condon* (1894), 10 Ind. App. 536; *Pennsylvania Co.* v. *Dickson* (1903), 31 Ind. App. 451; *Chicago, etc., R. Co.* v. *Woodward* (1905), 164 Ind. 360.

"Merely connecting with other routes," said the court in *Pittsburgh, etc., R. Co.* v. *Morton, supra,* "which he does not own, operate or control, will not make him a common carrier over such connecting routes." See, also, 1 Elliott, Railroads, §303. The evidence shows that the point of destination is not on appellant's line, and as appellant, as a common carrier, was not bound to deliver the goods beyond its line, if there is a liability in this case it must be by virtue of a special contract.

As the written instrument above set out was not a contract of shipment, the question is whether the evidence shows an oral contract on appellant's part to deliver

5. the goods at the point of destination. A witness testified that, acting for appellee, he delivered the goods to appellant's agent at New Castle; that he asked the agent what the cost would be to ship the goods to Rock-

ford, North Carolina, and was told that it would be $6.38, which amount he paid, took the receipt, and put the goods in a car. Another witness, who helped take the goods to the station, detailed substantially the same conversation, with the addition that the agent asked something about the weight of the goods. It is not disputed that appellant carried the goods to the end of its line, and delivered them to a common carrier. It is not claimed that any of the goods were lost or injured while on appellant's line. As the goods were lost or injured after they left appellant's line, and while in charge of some connecting carrier, the burden was upon appellee to establish appellant's liability for such loss or injury, to show a special contract on appellant's part to deliver the goods at the point of destination. By simply receiving the goods, marked for delivery at a point beyond its line, appellant did not thereby contract to transport and deliver them at the place of destination. *Crawford* v. *Southern R. Assn.* (1875), 51 Miss. 222, 24 Am. Rep. 626. But we think the evidence is sufficient to authorize the jury to conclude that the agent of appellant undertook to ship the goods to their destination. It was a question of fact for the jury. *Chicago, etc., R. Co.* v. *Woodward, supra.* The agent was told to what point the goods were to be shipped, and was asked the rate to that point, and collected the entire charge. He gave the shipper a writing which in no way indicated to the shipper that his company was not undertaking to ship the goods to their destination. The facts that the agent, if we assume that he had authority to act, gave the through rate and collected the entire charge were circumstances strongly tending to show a contract for through transportation by his company, or such a "connection in business" as to make his company liable over the entire route. We think there was competent evidence before the jury that appellant's agent contracted to carry the goods to their destination. See *Page* v. *Chicago, etc., R. Co.* (1895), 7 S. Dak. 297, 64

N. W. 137; *Railroad Co.* v. *Pratt* (1874), 22 Wall. 123, 22 L. Ed. 827; *Gray* v. *Jackson & Co.* (1871), 51 N. H. 9, 12 Am. Rep. 1; *Root* v. *Great Western R. Co.* (1871), 45 N. Y. 524; *Weed* v. *Saratoga, etc., R. Co.* (1838), 19 Wend. 534; *Nashua Lock Co.* v. *Worcester, etc., R. Co.* (1869), 48 N. H. 339, 2 Am. Rep. 242; *Chouteaux* v. *Leech & Co.* (1852), 18 Pa. St. 224, 57 Am. Dec. 602; *Candee* v. *Pennsylvania R. Co.* (1867), 21 Wis. *582, 94 Am. Dec. 566; *Hill Mfg. Co.* v. *Boston, etc., R. Co.* (1870), 104 Mass. 122, 6 Am. Rep. 202.

The question remains whether the agent had authority to bind his company by such a contract. The contract was made with appellant's local station agent at New Castle. No attempt was made to show what authority the agent had to make contracts for the carriage of goods. It is true that whether the agent had authority to make such a contract was a question of fact for the jury, and we could not disturb this finding of the jury if made upon evidence legally sufficient to justify it. *Railroad Co.* v. *Pratt, supra,* and notes. But the substance of the evidence from which the conclusion of authority was drawn is that the local station agent, in answer to a question, named the through rate, collected it, and gave a receipt for goods marked through to destination. It does not appear that there had ever been any previous dealings between appellee or his agent and the company from which such authority might reasonably have been inferred, nor is there any evidence that the company held itself out as a common carrier to a point beyond its own line. The agent might bind the company within the limits of his apparent authority, but as appellant, as a common carrier was not bound by law to carry and deliver goods beyond its own line, we can not presume that the agent had authority to bind the company by contract for carriage beyond its own line. His authority to receive goods for carriage does not imply authority to contract for extra-

terminal liability. Strictly speaking, the business of appellant as a carrier is confined to its own line, and the general scope of the authority of a subordinate agent must be limited to the company's business. No express authority of the agent is shown, and there is not sufficient evidence from which such authority might be implied. See *Grover, etc., Machine Co.* v. *Missouri, etc., R. Co., supra; Railroad Co.* v. *Pratt, supra; Burroughs* v. *Norwich, etc., R. Co.* (1868), 100 Mass. 26, 1 Am. Rep. 78; *Page* v. *Chicago, etc., R. Co., supra; Patterson* v. *Kansas City, etc., R. Co.* (1891), 47 Mo. App. 570; 4 Elliott, Railroads, §1437.

Judgment reversed.