## LAKE ERIE & WESTERN RAILROAD COMPANY v. SEELEY.

[No. 6,301. Filed January 12, 1909.]

1. APPEAL.—*Briefs.*—*Waiver.*—Points not discussed are waived. p. 71.

2. CARRIERS.—*Railroads.*—*Contracts.*—Contracts, written or parol, express or implied, to carry goods beyond their own lines and to be responsible therefor, may be made by railroad companies. p. 72.

3. PRINCIPAL AND AGENT.—*Railroads.*—*Contracts to Deliver Goods Beyond Their Own Lines.*—Agents of railroad companies, contracting to deliver goods beyond their own lines, must be shown to be authorized so to do, such authority being shown by express delegation thereof, or by conduct from which such authority may be implied. p. 73.

4. PRINCIPAL AND AGENT.— *Railroads.*— *Contracts.*— *Authority.*— *Negligence.*—*Questions for Jury.*—In an action against the initial railroad carrier, for damages to a shipment of hogs, the questions whether the shipper made a special contract, as claimed, whether the railroad agent had authority to make such contract, and whether there was negligence by defendant or its connecting lines, were for the jury. p. 73.

5. RAILROADS.—*Oral Contract for Shipment.*—*Subsequent Written Contract.*—*Defense.*—An action may be maintained under an oral freight contract for damages sustained prior to the execution of a subsequent written contract, unless such written contract contains an express provision destroying such right of action, such company's subsequent contract rights constituting a defense. p. 73.

6. RAILROADS.—*Contracts to Deliver Freight Beyond Company's Lines.*—*Authority of Agent.*—*Evidence.*—Authority on behalf of a railroad company's agent to contract to deliver freight beyond its own lines may be inferred from the fact that similar contracts had been made extending over a number of years. p. 74.

7. RAILROADS.— *Shipping Hogs.*— *Negligence.*— Evidence showing that the plaintiff shipped a car-load of hogs under a contract requiring the railroad company to deliver such hogs at a point beyond its lines, that there was a delay of a half-day in the arrival at destination, and that, upon arrival, the car was dry and dusty, supports a verdict that the carrier was guilty of negligence therein. p. 74.

From Henry Circuit Court; *John M. Morris*, Judge.

Action by Frank Seeley against the Lake Erie & Western Railroad Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*John B. Cockrum, Eugene H. Bundy* and *William A. Brown,* for appellant.

*M. E. Forkner, G. D. Forkner, W. O. Barnard* and *W. E. Jeffrey,* for appellee.

COMSTOCK, P. J.—Appellee, plaintiff below, recovered a judgment against appellant for $225, damages for the alleged negligence of appellant in transporting a car-load of hogs from Mt. Summit, Indiana, to East Buffalo, New York.

Of the errors assigned, appellant discusses only the one that the court erred in overruling appellant's motion for a new trial; and of the reasons assigned for a new trial, only the refusal to give to the jury instruction number three, requested by appellant, is discussed. Other alleged errors are waived.

The complaint is in three paragraphs. Each alleges that on May 2, 1905, the defendant was, and for many years prior thereto and ever since has been, a corporation operating a system of railroads as a common carrier through the village of Mt. Summit, Henry county, Indiana, to the city of Ft. Wayne, Indiana, and there intersecting with lines running to East Buffalo, New York; that on said day plaintiff delivered to the defendant, at the village of Mt. Summit, a carload of hogs, to be carried from said village to said city of East Buffalo; that defendant neglected to deliver said hogs, and so carelessly transported the same that thirty died, and that plaintiff is damaged in the sum of $300.

The second paragraph alleges that the hogs were consigned to Ransom, Mansfield & Company, East Buffalo, New York, and were the property of this plaintiff, he being the sole owner thereof; that the weather was warm, and the hogs were fat, and by the unreasonable delay in transportation thirty hogs died.

The third paragraph alleges that defendant agreed, for a reasonable compensation to be paid by plaintiff, to carry said hogs within a reasonable time; that thirty hours was the reasonable and ordinary time required between said points, but that the defendant negligently delayed the delivery of said hogs at said city of East Buffalo for about fifteen hours more than was necessary in the usual course of transportation; that by reason of such delay thirty hogs died, etc.

Defendant answers in two paragraphs: The first a general denial, and the second as follows: "The defendant, for second and further paragraph of answer to the plaintiff's complaint, says it admits that the plaintiff loaded a car-load of hogs at the defendant's station at Mt. Summit, Indiana, to be shipped from thence over the defendant's railroad, and delivered to connecting lines of railroads, to East Buffalo, New York, and at the time of loading said hogs in said defendant's car the plaintiff agreed with the defendant, which agreement was afterwards reduced to writing and signed by each party, which said written agreement is as follows: [setting out a limited liability live stock contract]."

Said instruction three, to the refusal of which an exception was taken, reads: "If the plaintiff shipped his live stock as alleged over the defendant's railroad, and the rate of freight charged was lower, under the written contract set forth in the defendant's answer, than it would have been if plaintiff had shipped without such contract, and the plaintiff knew this, this would be a sufficient consideration for the execution of said contract, whether the same was executed before or after the stock was shipped."

A common carrier may bind itself by contract to carry goods beyond its own lines and be responsible for safe carriage from the point received to the point of destina-

2. tion. Moore, Carriers, §13 *et seq.; Chicago, etc., R. Co.* v. *Woodward* (1905), 164 Ind. 360, and cases cited. Such contracts may be made by parol, and may be

express or implied. The agent making such special contract must be shown to have authority to make it.

3. Such contract may be implied from the dealings between the shipper and carrier. "The custom and usages of the carrier in accepting goods for transportation; the connecting lines, and the extent to which the contracting company has held itself out to the public; the giving of a through bill of lading; the relation existing between initial carrier and connecting lines—are all competent evidence to be taken into consideration in determining whether there was an undertaking for through liability; and in the case at bar, whether the shipper made a special contract,

4. whether the agent had authority to make terms of contract, and whether there was negligence on the part of appellant or its connecting lines were questions to be determined by the jury. *Chicago, etc., R. Co.* v. *Woodward, supra.*

In *Louisville, etc., R. Co.* v. *Craycraft* (1895), 12 Ind. App. 203, a railroad received stock for shipment under a parol contract to carry said stock to a certain place,

5. and the stock was injured by reason of a defect in the car. It was held that the fact that the parties, after the injury occurred, entered into a written contract of shipment did not destroy the right to recover damages for a prior breach of the parol contract, unless there was an express provision to that effect, and it devolved upon the railroad company to plead such provision in defense; that, the parol contract having been made and broken before the written contract was made, the parol contract was not merged in such a sense as to destroy the right of action accruing thereunder. See, also, cases cited in opinion.

It is the theory of appellee that his stock was carried under a parol contract made May 2, 1905. If damages resulted to him before the signing of a written contract, he still had a right of action under the parol contract for damages incurred prior to the execution of the written contract. The

court instructed the jury in harmony with said decision, and under said decision the charge requested was properly refused.

Appellant cited *Pittsburgh, etc., R. Co.* v. *Bryant* (1905), 36 Ind. App. 340, in support of the proposition that a common carrier is not bound by the contract of the station agent for the transportation of goods to a point beyond its own lines, unless said agent was expressly or impliedly authorized from former dealings of the parties, or the carrier or company held itself out as common carrier to such point, and in which this court held that there was no evidence of the authority expressly given, nor any evidence from which it could be inferred. The evidence shows a different state of facts in that case and in the case at bar. In the former case the only transaction shown was the shipment of a barrel of household goods, and in the case at bar numerous shipments, extending over a number of years, made without any agreement to limit liability and without a written contract dated before or after such shipments were made, were shown to have been made.

There is evidence to show that appellee, who was the owner of eighty-five head of hogs, on May 2, 1905, ordered a car from appellant's agent at Mt. Summit, Indiana, for the transportation of said hogs from said point to East Buffalo, New York; that, in pursuance of said order, said car was set in on said track of appellant at said place, and said hogs were loaded therein; that appellee requested appellant to ship said hogs in care of Ransom, Mansfield & Company, at East Buffalo, New York, and that appellant undertook and agreed to ship said hogs as requested, and billed the same as directed by appellee as aforesaid; that there was delay in making said shipment; that by the usual and reasonable course of making a shipment between said points said hogs should have arrived at their destination the morning of May 4, 1905, before the market for said day opened, whereas said hogs did not arrive at said destina-

tion until about 5 o'clock of the afternoon of said day, and after the market had closed; that when said hogs arrived at their destination, the car which contained them was dry and dusty, from which the inference can be legitimately drawn that the employes of the appellant or of the connecting lines of railroad were guilty of negligence in failing properly to flush said hogs with water while en route, or properly to care for said hogs during said time. The agreement set up in answer was made after the damage had been suffered.

Judgment affirmed.